IN THE
UNITED STATES COURT OF APPEAL
FOR THE NINTH CIRCUIT

_____

RICHARDS ENOS; et al.,
*Plaintiffs - Appellants*,

vs.

ERIC HOLDER; et al.,
*Defendants - Appellees.*

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

_____

**EXCERPT OF RECORD**

_____

Donald E. J. Kilmer, Jr.
LAW OFFICES OF DONALD KILMER
1645 Willow Street, Suite 150
San Jose, California 95125
Vc: 408/264-8489   Fx: 408/264-8487
E-Mail: Don@DKLawOffice.com

*Counsel for Plaintiff - Appellants*

**INDEX / TABLE OF CONTENTS**

| Trial Court Docket No. | Document | Page No. | ER Tab |
|---|---|---|---|
| 65 | Notice of Appeal to the United States Court of Appeals for the Ninth Circuit | 001 | 1 |
| 64 | Judgment | 006 | 2 |
| 63 | Order Granting Defendants' Motion to Dismiss (Second Amended Complaint) | 007 | 3 |
| 27 | Second Amended Complaint and Request for Injunctive/Declaratory Relief | 029 | 4 |
| 24 | Order Dismissing in Part and Denying in Part Defendants' Motion to Dismiss (First Amended Complaint) | 046 | 5 |
| 8 | First Amended Complaint and Request for Injunctive/Declaratory Relief | 060 | 6 |
| 70 | Reporter's Transcript - Motion for Summary Judgment: Wed., January 25, 2012 | 076 | 7 |
| | Civil Docket for Case 2:10-CV-02911 | 132 | 8 |

Donald E.J. Kilmer, Jr. (SBN: 179986)
LAW OFFICES OF DONALD KILMER, A.P.C.
1645 Willow Street, Suite 150
San Jose, California 95125-5120
Voice: (408) 264-8489
Fax: (408) 264-8487
Email: Don@DKLawOffice.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

| | |
|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON and VERNON NEWMAN, <br><br> Plaintiffs, <br><br> vs. <br><br> ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation, and UNITED STATES OF AMERICA, <br><br> Defendants. | CASE NO.: 2:10-CV-02911-JAM-EFB <br><br> NOTICE OF APPEAL TO THE UNITED STATES DISTRICT COURT OF APPEAL FOR THE NINTH CIRCUIT |

Plaintiffs: RICHARD ENOS, JEFF BASTASINI,  LOUIE MERCADO,

WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON and VERNON

NEWMAN, appeal to the United States Court of Appeal for the Ninth Circuit from

the final judgment of the district court, entered in this case on February 28, 2012,

and all interlocutory orders that gave rise to the judgment, including but not

limited to the ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, filed

LAW OFFICE OF DONALD KILMER, APC
1645 Willow St., Suite 150, San Jose, CA 95125
Vc: (408) 264-8489  Fx: (408) 264-8487
Don@DKLawOffice.com

on February 28, 2012. (Dkt # 63) and the ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS filed on July 8, 2011.
(Dkt # 24).

Dated: February 29, 2012

/s/ Donald Kilmer

Donald Kilmer, Attorney for Plaintiffs

LAW OFFICE OF DONALD KILMER, APC
1645 Willow St., Suite 150, San Jose, CA 95125
Vc: (408) 264-8489  Fx: (408) 264-8487
Don@DKLawOffice.com

Donald E.J. Kilmer, Jr. (SBN: 179986)
LAW OFFICES OF DONALD KILMER, A.P.C.
1645 Willow Street, Suite 150
San Jose, California 95125-5120
Voice: (408) 264-8489
Fax: (408) 264-8487
Email: Don@DKLawOffice.com

Attorney for Plaintiffs

1
2
3
4
5
6
7

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**LAW OFFICE OF DONALD KILMER, APC**
1645 Willow St., Suite 150, San Jose, CA 95125
Vc: (408) 264-8489  Fx: (408) 264-8487
Don@DKLawOffice.com

| | |
|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON and VERNON NEWMAN,<br><br>     Plaintiffs,<br><br>     vs.<br><br>ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation, and UNITED STATES OF AMERICA,<br><br>     Defendants. | Appellate Case No.: _____<br><br>Trial Court:<br><br>United States District Court for the Eastern District of California<br><br>Case No.: 2:10-CV-02911-JAM-EFB<br><br><br>PLAINTIFF/APPELLANTS' REPRESENTATION STATEMENT |

The undersigned represents Plaintiff/Appellants: RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON and VERNON NEWMAN, in this matter and no others.

The remaining parties to this action are the Defendant/Appellees: ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation, and UNITED STATES OF AMERICA.

**LAW OFFICE OF DONALD KILMER, APC**
1645 Willow St., Suite 150, San Jose, CA 95125
Vc: (408) 264-8489  Fx: (408) 264-8487
Don@DKLawOffice.com

Plaintiff/Appellants are currently represented by:

Donald E.J. Kilmer, Jr. (SBN: 179986)
LAW OFFICES OF DONALD KILMER, A.P.C.
1645 Willow Street, Suite 150
San Jose, California 95125-5120
Voice: (408) 264-8489
Fax: (408) 264-8487
Email: Don@DKLawOffice.com


Defendant/Appellees are currently represented by:

BENJAMIN B. WAGNER
United States Attorney
EDWARD A. OLSEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Voice: (916) 554-2821
Fax: (916) 554-2900
Email: edward.olsen@usdoj.gov


Dated: February 29, 2012

                                    /s/ Donald Kilmer
                                    Donald Kilmer,
                                    Attorney for Plaintiffs

Donald E.J. Kilmer, Jr. (SBN: 179986)
LAW OFFICES OF DONALD KILMER, A.P.C.
1645 Willow Street, Suite 150
San Jose, California 95125-5120
Voice: (408) 264-8489
Fax: (408) 264-8487
Email: Don@DKLawOffice.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

RICHARD ENOS, JEFF BASTASINI,
LOUIE MERCADO, WALTER
GROVES, MANUEL MONTEIRO,
EDWARD ERIKSON and VERNON
NEWMAN,

        Plaintiffs,

        vs.

ERIC HOLDER, as United States
Attorney General, and ROBERT
MUELLER, III, as Director of the
Federal Bureau of Investigation, and
UNITED STATES OF AMERICA,

        Defendants.

CASE NO.: 2:10-CV-02911-JAM-EFB

Certificate of Service of:

NOTICE OF APPEAL TO THE
UNITED STATES DISTRICT COURT
OF APPEAL FOR THE NINTH
CIRCUIT

And:

REPRESENTATION STATEMENT

     This is to certify that on February 29, 2012, a true and correct copy of the

NOTICE OF APPEAL TO THE UNITED STATES DISTRICT COURT OF APPEAL

FOR THE NINTH CIRCUIT, and the REPRESENTATION STATEMENT, were

filed electronically with this court, thus giving all parties and their attorneys notice

and copies of said documents via the Court's CM/ECF system and/or the PACER

system.

        /s/ Donald Kilmer, Counsel for Plaintiff/Appellants

LAW OFFICE OF DONALD KILMER, APC
1645 Willow St., Suite 150, San Jose, CA 95125
Vc: (408) 264-8489  Fx: (408) 264-8487
Don@DKLawOffice.com

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

**JUDGMENT IN A CIVIL CASE**

**RICHARD ENOS, ET AL.,**

CASE NO: **2:10−CV−02911−JAM −EFB**

v.

**ERIC HOLDER, ET AL.,**

_____

**XX** ⎯ **Decision by the Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

**THAT JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE COURT'S ORDER FILED ON 2/28/2012**

**Victoria C. Minor**
Clerk of Court

ENTERED: **February 28, 2012**

by: /s/ L. Reader
Deputy Clerk

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON,and VERNON NEWMAN,<br><br>Plaintiffs,<br><br>v.<br><br>ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 2:10-CV-2911 JAM-EFB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

This matter is before the Court on Defendants' Eric Holder and Robert Mueller, III (collectively "Defendants") Motion to Dismiss (Doc. #32) Plaintiffs' Richard Enos ("Enos"), Jeff Bastasini ("Bastasini"), Louie Mercado ("Mercado"), Walter Groves ("Groves"), Manuel Monteiro ("Monteiro"), Edward Erickson ("Erickson"), and Vernon Newman ("Newman") Second Amended Complaint ("SAC") (Doc. #27). The Motion to Dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The above-named

plaintiffs opposed the motion.  A hearing on the motion to dismiss
was held on January 25, 2012.  For the reasons set forth below,
the Court GRANTS the motion to dismiss.

I.  FACTUAL ALLEGATIONS AND SUMMARY OF ARGUMENTS

Plaintiffs, each convicted in California of a misdemeanor
crime of domestic violence over ten years ago, allege that they are
allowed to possess a firearm under California law but are
prohibited from possessing a firearm under federal law.
Accordingly, they ask the Court for declaratory relief restoring
their right to lawfully possess a firearm under federal law, and
challenge the constitutionality of 18 U.S.C. § 922(g)(9), the
federal statute which prohibits them from possessing a firearm.

Enos plead no contest to a misdemeanor charge under California
Penal Code § 273.5(a) in 1991.  In 1993 the California Legislature
amended Penal Code § 12021 and added charges under Penal Code
§ 273.5(a) to the list of misdemeanors which prohibit a person from
acquiring a firearm for ten years after the date of conviction.
After ten years, the right to possess a firearm is restored under
California Penal Code 12021(c)(1).[1]  In 1996, Congress amended the
Violence Against Women Act to include 18 U.S.C. § 922(g)(9), a
prohibition against the possession of firearms by misdemeanants
convicted of domestic violence.  In 1999, Enos petitioned for and
received a record clearance under California Penal Code § 1203.4.
He also filed a petition for restoration of civil rights under

---

[1] Effective January 1, 2012, California Penal Code § 12021(c)(1)
was repealed and reenacted without substantive change as California
Penal Code § 29805. For purposes of clarity, this opinion will
continue to refer to the statute as California Penal Code
§ 12021(c)(1).

2

1  Penal Code § 12021(c)(3),[2] which was granted by the Honorable Thang
2  N. Barrett.  Accordingly, Enos was permitted to own a firearm by
3  the State of California at that time.  However, when he attempted
4  to purchase a gun in 2004, he was denied the purchase and advised
5  that the denial was being maintained by the U.S. Department of
6  Justice, Federal Bureau of Investigation, and the National Instant
7  Criminal Background Check System (NICS).

8  Bastasini, Mercado, Groves and Monteiro each plead no contest
9  or guilty to a misdemeanor charge under California Penal Code
10  273.5, between 1990-1992.  They later petitioned for and received
11  record clearance under California Penal Code § 1203.4.  They each
12  attempted to purchase a gun in July 2011, and were prohibited from
13  doing so by NICS, after answering "YES" to questions 11.i on ATF
14  Form 4473, which asks if a person has been convicted of a
15  misdemeanor crime of domestic violence.

16  Erickson and Newman were both convicted of misdemeanor crimes
17  of domestic violence, in 1996 and 1997, respectively.  They later
18  petitioned for and received record clearance under California Penal
19  Code § 1203.4.  Edwards and Newman both attempted to purchase
20  firearms in July 2011 and were prohibited from doing so after
21  answering "YES" to question 11.i on ATF Form 4473.

22  Plaintiffs allege that under California law they are permitted
23  to own a firearm, but that they are prohibited from doing so by
24  federal law.  Accordingly, Plaintiffs seek declaratory relief from
25  the Court to restore their right to possess a firearm under federal

26

27  [2] Effective January 1, 2012, California Penal Code § 12021(c)(3)
    was repealed and reenacted without substantive change as California
    Penal Code § 29860.  For purposes of clarity, this opinion will
28  continue to refer to the statute as California Penal Code
    § 12021(c)(3).

3

9

law.  The SAC also challenges 18 U.S.C § 922(g)(9) and 18 U.S.C.
§ 922(d)(9) as unconstitutional under the Second Amendment, both
facially and as applied to Plaintiffs.

Defendants' motion to dismiss raised a number of arguments in
support of dismissing Plaintiffs' claims, several of which were
resolved at the hearing.  The parties reached a stipulation (Doc.
#61) that Plaintiffs may add the United States of America as a
defendant, to satisfy the requirements of 18 U.S.C. § 925A.
Accordingly, "Defendants" in this order includes the United States
of America.  Plaintiffs conceded that they no longer seek to
maintain their facial challenge to 18 U.S.C. § 922(g)(9), nor their
facial and as-applied challenges to 18 U.S.C. § 922(d)(9).[3]
Accordingly those allegations are dismissed from the SAC.


                          II.  OPINION

A.  Legal Standard

     1.  Rule 12(b)(1) dismissal

A party may move to dismiss an action for lack of subject
matter jurisdiction pursuant to Federal Rule of Civil Procedure
12(b)(1).  When a defendant brings a motion to dismiss for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1), the
plaintiff has the burden of establishing subject matter
jurisdiction.  See Rattlesnake Coalition v. United States Envtl.
Protection Agency, 509 F.3d 1095, 1102, FN 1 (9th Cir. 2007).

     2.  Rule 12(b)(6) Dismissal

A party may move to dismiss an action for failure to state a

---

[3] 18 U.S.C. § 922(d)(9) makes it unlawful for any person to sell a
firearm or ammunition to a person who has been convicted of
misdemeanor domestic violence.

claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Absent prejudice, or a strong showing of any [other relevant] factor[], there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Id.

### 3. Judicial Notice

Generally, the court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a

claim.  There are two exceptions: when material is attached to the
complaint or relied on by the complaint, or when the court takes
judicial notice of matters of public record, provided the facts are
not subject to reasonable dispute.  Sherman v. Stryker Corp., 2009
WL 2241664 at *2 (C.D. Cal. Mar. 30, 2009) (internal citations
omitted).  Here, Plaintiffs request judicial notice of the stay
orders in several Second Amendment cases pending in the Ninth
Circuit, as well as the opinion of the First Circuit in a recently
decided Second Amendment case.  The Court will take judicial notice
of the orders and opinion as requested by Plaintiffs, as they are
matters of public record.

  B. <u>Claims for Relief</u>

   1. <u>Declaratory Relief Claims</u>

  The first, second and third claims for relief in the SAC seek
declaratory relief that Plaintiffs satisfy the requirements of 18
U.S.C. § 921(a)(33)(B)(ii) to possess a firearm despite being
convicted of a misdemeanor crime of domestic violence.  18 U.S.C. §
922(g)(9), also known as the Lautenberg Amendment, makes it
unlawful for any person who has been convicted in any court of a
misdemeanor crime of domestic violence to ship or transport in
interstate or foreign commerce, or possess in or affecting
commerce, any firearm or ammunition; or to receive any firearm or
ammunition which has been shipped or transported in interstate or
foreign commerce.  Under 18 U.S.C. § 925A, any person who was not
prohibited from receipt of a firearm pursuant to section 922(g) may
bring an action against the State or political subdivision
responsible for providing erroneous information, or responsible for
denying the transfer, or against the United States, as the case may

1 be, for an order directing that the erroneous information be

2 corrected or that the transfer be approved, as the case may be.  18

3 U.S.C. § 925A(2).

4      18 U.S.C. § 921(a)(33) defines a "misdemeanor crime of

5 domestic violence" as a misdemeanor that has as an element the use

6 or attempted use of physical force, or the threatened use of a

7 deadly weapon, committed by a current or former spouse, parent or

8 guardian of the victim, by a person with whom the victim shares a

9 child in common, by a person who is cohabiting with or has

10 cohabited with the victim as a spouse, parent, or guardian, or by a

11 person similarly situated to a spouse parent, or guardian of the

12 victim.  However, the statute provides that a person shall not be

13 considered to have been convicted of such an offense unless the

14 person was represented by counsel in the case, or knowingly and

15 intelligently waived the right to counsel in the case, and if the

16 prosecution for an offense entitled the person to a jury trial, the

17 case was tried by a jury or the person knowingly and intelligently

18 waived the right to a jury trial, by guilty plea or otherwise. 18

19 U.S.C. § 921(a)(33)(B)(i).

20      18 U.S.C. § 921(a)(33)(B) further provides that "a person

21 shall not be considered to have been convicted of such an offense

22 for purposes of this chapter if the conviction has been expunged or

23 set aside, or is an offense for which the person has been pardoned

24 or has had civil rights restored (if the law of the applicable

25 jurisdiction provides for the loss of civil rights under such an

26 offense) unless the pardon, expungement, or restoration of civil

27 rights, expressly provides that the person may not ship, transport,

28 posses, or receive firearms."  18 U.S.C. § 921(a)(33)(B)(ii).

Plaintiffs argue that under federal law they should be considered as having had their civil rights restored, because by operation of law (the passage of ten years as provided for by Penal Code 12021) their right to possess a firearm has been restored by the State of California.  Alternatively they argue that they were not convicted of misdemeanor domestic violence under 18 U.S.C. § 921(a)(33)(b)(i) because they were unable to make a knowing and intelligent waiver of their right to a jury trial at the time of their convictions, since 18 U.S.C. § 922(g)(9) had not yet been enacted.

Defendants moved to dismiss the declaratory relief claims, arguing that Plaintiffs were convicted of misdemeanor domestic violence because they knowingly and intelligently waived their rights to a jury trial, and that restoration by operation of California law of Plaintiffs' right to possess a firearm does not qualify as restoration of civil right under 18 U.S.C. § 921(a)(33)(B)(ii).

a. Waiver of Right to Jury Trial

As an initial matter, Plaintiffs cited no authority for the proposition that, in a civil proceeding brought under 18 U.S.C. § 925A, the Court would have jurisdiction to determine that an individual's waiver of his or her right to a jury trial that was made in a state criminal proceeding was not knowing and intelligent.  Even assuming the Court has jurisdiction, Plaintiffs' arguments lack merit because when a person enters a guilty or no contest plea, he or she must only be advised of all direct consequences of the conviction.  Bunnell v. Superior Court, 13 Cal.3d 592, 605 (1975).  This requirement relates to the primary

and direct consequences involved in the criminal case itself and
not secondary, indirect or collateral consequences.  People v.
Arnold, 33 Cal.4th 294, 309 (2004).  The possible future use of a
current conviction is not a direct consequence of the conviction.
People v. Gurule, 28 Cal.4th 557, 634 (2002).

Plaintiffs contend that Padilla v. Kentucky, 130 S. Ct. 1473
(2010), in which the Supreme Court found that counsel had an
obligation to advise his client that the offense to which he was
pleading guilty was a deportable offense, supports Plaintiffs'
argument regarding knowing and intelligent waiver and collateral
consequences.  However, Padilla is not analogous, and does not
support Plaintiffs' theory.  Accordingly, the Court dismisses the
allegations that at the time Plaintiffs plead to their convictions,
they were unable to make a knowing and intelligent waiver of their
right to a jury trial because they were not apprised of the
possibility of losing their right to possess a firearm.  Congress
had not yet enacted 18 U.S.C. § 922(g)(9), and the law does not
require Plaintiffs to be advised of future unanticipated changes in
the law.

b. Restoration of Civil Rights

Defendants also argue that Plaintiffs have not had their civil
rights restored, and have not otherwise satisfied the requirements
of 18 U.S.C. § 921(a)(33)(B)(ii) to regain their right to possess a
firearm.  Though Plaintiffs sought relief under California Penal
Code § 1203.4 to have their records cleared, the Ninth Circuit has
already held that this does not qualify as expungement under 18
U.S.C. § 921(a)(33)(B)(ii).  Jennings v. Mukasey, 511 F.3d 894
(2007).  Likewise, Defendants contend that the passage of ten years

from the date of the conviction, while restoring the right to

possess a firearm under California law, does not restore

Plaintiffs' right to possess a firearm under federal law.

Defendants assert that, as has been recognized by numerous

courts, the test for whether civil rights have been restored is

whether an individual's right to vote, sit on a jury, or hold

elected office has been restored.  See United States v. Andaverde,

64 F.3d 1305, 1309 (1995) (stating that in considering whether an

individual's civil rights have been restored, the "Ninth Circuit

considers whether the felon has been restored the right to vote, to

sit on a jury and hold public office"); United States v. Dahms, 938

F.2d 131, 133 (9th Cir. 1991) (stating that an individual "who,

having first lost them upon conviction, regains the right to vote,

sit on a jury, and hold public office in the state in which he was

originally convicted has had his civil rights restore . . ."); 

United States v. Gomez, 911 F.2d 219, 220 (9th Cir. 1990) (stating

that the intent of Congress in using the phrase "civil rights

restored" under 18 U.S.C. § 921(a)(20) was to give effect to state

reforms with respect to the status of an ex-convict).

Because Plaintiffs do not allege they lost the right to vote,

sit on a jury or hold public office, Defendants argue they cannot

allege that their rights have been restored within the meaning of

the statute.  See Logan v. United States, 552 U.S. 23, 36 (2007)

("the words 'civil rights restored' do not cover a person whose

civil rights were never taken away");  United States v. Brailey,

408 F.3d 609, 613 (9th Cir. 2005) ("Because Brailey's misdemeanor

conviction did not remove Brailey's core civil rights of voting,

serving as a juror, or holding public office, his civil rights have

not been restored within the meaning of federal law by Utah's 2000 amendment permitting him to possess a firearm"). Restoration of the right to bear arms is insufficient to qualify as 'restoration of rights,' as restoration must be substantial, not de minimus. Andaverde, 64 F.3d at 1309 (analyzing restoration of rights in the context of a felon-in-possession).

Plaintiffs contend that following the Supreme Court's decisions in District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), which recognized the right to bear arms as a fundamental individual right, the Court should re-interpret the "restoration of rights" provision as including cases such as Plaintiffs, where the only right that was taken away and then restored was the right to possess a firearm. Plaintiffs argue that the Court should disregard cases decided pre-Heller, such as Brailey. Further, Plaintiffs assert that because few, if any, states take away a misdemeanants right to vote, sit on a jury, or hold elected office, interpreting "civil rights" to include only these three rights, and not firearm rights, makes little sense and can result in a lifetime ban on firearms possession. Plaintiffs allege that they are facing such a lifetime ban, as they have no means under state law to have their convictions expunged, set aside, or pardoned, and their rights to vote, sit on a jury or hold public office were never taken away and restored.

In response, Defendants argue that the Court should still follow Brailey; that its timing as a pre-Heller case is inconsequential for several reasons. First, the right to bear arms recognized by Heller is not among the cluster of rights (the right

11

to vote, sit on a jury, and hold public office) typically recognized by courts when analyzing whether an individual's civil rights have been restored.  See e.g. Andaverde, 64 F.3d at 1309; Logan, 552 U.S. at 36; Dahms, 938 F.2d at 133; Gomez, 911 F.2d at 220.

Second, Defendants note that 18 U.S.C. § 921(a)(33)(B)(ii) refers to civil rights in the plural, thus even if the right to possess a firearm was recognized under state law as having been restored, this would be insufficient to fulfill the restoration of rights contemplated by the statute. See e.g. United States v. Keeney, 241 F.3d 1040, 1044 (8th Cir. 2001) ("Significantly 921(a)(20) and 921(a)(33)(B)(ii) both refer to civil rights in the plural, thus suggesting that Congress intended to include a cluster of rights, as referenced in McGrath, within the meaning of the term "civil rights" as contained in these provisions") (citing McGrath v. United States, 60 F.3d 1005 (2d Cir. 1995); United States v. Meeks, 987 F.2d 575, 578 (9th Cir. 1993) (holding that an individual whose rights to vote and hold office had been restored, but not his right to serve on a jury, had not had his "civil rights restored"); United States v. Valerio, 441 F.3d 837, 843 (9th Cir. 2006) (noting that the individual's right to vote and right posses firearms had been restored, but holding that this is not enough). Even post-Heller, the Seventh Circuit in United States v. Skoien, 614 F.3d 638, 644-45 (7th Cir. 2010) (en banc) discussed "civil rights" under 18 U.S.C. § 921(a)(33)(B)(ii) as consisting of the right to vote, serve on a jury, and hold public office.[4]

---

[4] The Court notes however that the Skoien Court's subsequent statement, that California law provides a means for expungment of misdemeanor domestic violence convictions through California Penal

1    Plaintiffs countered this argument, both in their opposition

2  papers and again at oral argument, with the theory that the Second

3  Amendment protects multiple rights.  Plaintiffs assert that the

4  right to keep and the right to bear arms are different rights,

5  making up part of a "bundle of rights" protected by the Second

6  Amendment, and restored by the State of California.  Plaintiffs

7  contend that Heller and McDonald both recognized multiple rights as

8  protected by the Second Amendment, but Defendants assert that both

9  decisions refer to a singular right.

10    Having carefully reviewed the Heller and McDonald opinions,

11  the Court notes that throughout both opinions the majority refers

12  to a singular right to keep and bear arms protected by the Second

13  Amendment.  The Heller majority did note that Justice Stevens in

14  his dissent "believes that the unitary meaning of "keep and bear

15  Arms" is established by the Second Amendment's calling it a "right"

16  (singular) rather than "rights" (plural). . . . There is nothing to

17  this.  State constitutions of the founding period routinely grouped

18  multiple (related) guarantees under a singular "right,". . ."

19  Heller at 591.  However, whether this Court views the Second

20  Amendment as securing a singular right, plural rights, or "multiple

21  related guarantees," it still finds that this does not put

22  restoration of an individuals' right to possess a firearm within

23  the purview of "civil rights restored," which courts have

24  repeatedly classified as the right to vote, hold public office and

25

26  Code 1203.4a, is a misstatement of California law.  Additionally,
    the California legislature recently amended 1203.4a foreclosing
27  Plaintiffs' ability to seek relief through that statute.  As
    discussed at oral argument, neither 1203.4 or 1203.4a are available
28  to Plaintiffs to seek the equivalent of an expungment or set aside
    of their convictions under 18 U.S.C. § 921(a)(33)(B)(ii).

13

sit on a jury.

Lastly, Defendants urge the Court to look to congressional intent, reasoning that Congress, when enacting § 922(g)(9) and § 921 and in 1996, did not intend for the right to bear arms to be included as a "civil right" for purposes of restoration under 18 U.S.C. § 921(a)(33)(b)(ii). Indeed, as Defendants argue, common sense dictates that the Legislature in 1996 could not have intended "civil rights" to include a right that the Supreme Court did not recognize until Heller in 2008.

Plaintiffs were unable to cite to any case supporting their argument that the restoration of an individual's right to possess a firearm constitutes a restoration of "civil rights" under 18 U.S.C. § 921(a)(33)(B)(ii). To find that Plaintiffs have stated a claim for the declaratory relief that they seek, this Court would be required to interpret 18 U.S.C. § (921)(a)(33)(B)(ii) in a way that no other court has, thus far, interpreted this statute. Likewise, Plaintiffs were unable to cite to any case law in support of their argument that Brailey and the cases cited above regarding the meaning of "civil rights restored" should no longer be followed because they were decided prior to Heller. The Court finds that as a matter of law, Plaintiffs have not alleged facts showing that their civil rights have been restored. Even Enos, whose record clearance was granted by a Superior Court judge, has not shown that he meets the requirements of 18 U.S.C. § 921(a)(33)(B)(ii).

Though Plaintiffs ask the Court to base a new interpretation of the statute on the Supreme Court's holdings in Heller and McDonald, this Court finds greater merit in Defendants argument that it is the role of the legislature, not this Court, to change

or re-write the statute at issue in this case. As was discussed at the hearing, nothing prevents Plaintiffs from petitioning Congress to change the law, as citizens often do when they are unhappy with the way a bill is written. Defendants argued that Plaintiffs are free to ask their legislator(s) to sponsor a bill before Congress to change the language of 18 U.S.C. § 921(a)(33)(b)(ii), and raise before Congress the same arguments that Plaintiffs raise before this Court.

In light of the extensive case law holding otherwise, and looking to Congress' intent when creating this exception to § 922(g)(9), this Court refuses Plaintiffs' invitation to create a new interpretation of "civil rights restored" under 18 U.S.C. § 921(a)(33)(B)(ii). The SAC fails to plead facts showing that Plaintiffs' civil rights have been restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii), or that they have otherwise fulfilled the requirements of the statute, and further amendment would be futile. Accordingly, the motion to dismiss Plaintiffs' claims for declaratory relief is granted, and the claims are dismissed with prejudice.

### 2. Second Amendment Constitutional Claim

Plaintiffs' fourth claim for relief argues that absent declaratory relief from the Court finding that they have satisfied the requirements of 18 U.S.C. § 921(a)(33)(B)(ii), 18 U.S.C. § 922(g)(9) amounts to a lifetime ban on their right to own a firearm, in violation of the Second Amendment. Defendants contend that the SAC fails to state a claim, because 18 U.S.C. § 922(g)(9) is constitutional, even when, as alleged by Plaintiffs, it results in a lifetime ban on firearm possession.

In <u>United States v. Vongxay</u>, 594 F.3d 1111 (9th Cir. 2010), the Ninth Circuit analyzed the constitutionality of 18 U.S.C. § 922(g)(1), which prohibits persons with felony convictions from possessing firearms.  The Ninth Circuit found that § 922(g)(1) remained constitutional under the Second Amendment, despite the <u>Heller</u> decision, as denying felons the right to bear arms is consistent with the explicit purpose of the Second Amendment to maintain the security of a free State.  <u>Id.</u> at 1117.  The Ninth Circuit noted that the Court in <u>Heller</u> specifically stated that, "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . we identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." <u>Vongxay</u>, 594 F.3d at 1115 (citing <u>Heller</u>, 128 S. Ct. at 2817, n. 26).  After discussing the extensive case law upholding § 922(g)(1), the Ninth Circuit found that § 921(g)(1) does not violate the Second Amendment as it applied to Mr. Vongxay, a convicted felon.  Accordingly, Defendants urge this Court to grant the motion to dismiss, extending the Ninth Circuit's holding in <u>Vongxay</u> to find that that § 922(g)(9) is lawful under <u>Heller</u>, and does not violate the Second Amendment as applied to Plaintiffs' convicted domestic violence misdemeanants.

The Ninth Circuit did not apply any level of scrutiny in reaching their decision on the constitutionality of § 922(g)(1) under the Second Amendment.  It was not until the Court analyzed the accompanying equal protection claim that they applied constitutional scrutiny.  No equal protection claim is alleged in the SAC, and Defendants urge this Court to follow the Ninth Circuit

by deciding the Second Amendment claims without applying
constitutional scrutiny.  Though the parties argued at length
during oral argument about the appropriate level of scrutiny to
apply to a Second Amendment challenge, the appropriate level of
scrutiny has not been designated by the Supreme Court or the Ninth
Circuit, and this Court need not reach that question in order to
decide this motion.

Numerous courts have found 18 U.S.C. § 922(g)(9) to be
presumptively lawful under District of Columbia v. Heller, 554 U.S.
570 (2008).  See e.g. United States v. White, 593 F.3d 1199, 1206
(11th Cir. 2010) ("we now explicitly hold that 922(g)(9) is a
presumptively lawful longstanding prohibition on the possession of
firearms"); United States v. Booker, 644 F. 3d 12, 24 (1st Cir.
2011) ("indeed, 922(g)(9) fits comfortably among the categories of
regulations that Heller suggested would be presumptively lawful");
In re United States, 578 F.3d 1195 (10th Cir. 2009) ("nothing
suggests that the Heller dictum, which we must follow, is not
inclusive of § 922(g)(9) involving those convicted of misdemeanor
domestic violence"); United States v. Smith, 742 F.Supp.2d 855, 863
(S.D. W. Va. 2010) ("therefore, 922(g)(9) should be considered
presumptively lawful, and it is the opinion of this Court that the
statute may be upheld on that basis alone").

Defendants argue that the Ninth Circuit has already held that
felons are not protected by the Second Amendment in Vongxay, and
the Court should extend similar reasoning to domestic violence
misdemeanants.  All felons, whether violent or not, are
disqualified from protection under the Second Amendment.  Vongxay,
594 F.3d at 1116.  However, § 922(g)(9) does not apply to all

misdemeanants; it singles out only those who have committed violent acts against their intimate partners, children or other family members. See United States v. Hayes, 129 S. Ct. 1079, 1087 (2009) (noting that Congress enacted § 922(g)(9) out of concern that existing felon-in-possession laws were not keeping firearms out of the hands of domestic abusers, because many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies).

Plaintiffs have argued that unless the Court agrees to re-interpret § 921(a)(33)(B)(ii) and grant Plaintiffs' the declaratory relief that they seek, then § 921(a)(33)(B)(ii) along with § 922(g)(9) results in an unconstitutional lifetime ban on Plaintiffs' ability to possess firearms.  Plaintiffs did not cite to any cases which have found § 922(g)(9) to be constitutionally suspect, but argue that without a means to restore their rights or have their convictions set aside or otherwise pardoned or expunged, § 922(g)(9) cannot pass constitutional muster.

Defendants note that courts have said that for the same reasons the Supreme Court articulated for stating that the long standing prohibitions referred to in Heller remain presumptively lawful (i.e., the prohibitions pertaining to felons and the mentally ill), there is an even stronger reason for finding that persons convicted of misdemeanor crimes of domestic violence should not be protected by the Second Amendment.  See e.g. Smith, 742 F.Supp.2d at 863 (stating that the definitional net of § 922(g)(9) is more narrowly crafted than that of § 922(g)(1), another compelling reason to uphold § 922(g)(9) by analogy to § 922(g)(1)); White, 593 F.3d at 1206 (noting that in contrast to a felon, who

could be convicted of a violent or non-violent act, a person convicted under § 922(g)(9) must have first acted violently toward a family member or domestic partner).

Thus, even if § 922(g)(9) imposes a lifetime ban on a domestic violence misdemeanant's ability to possess a firearm, Defendants argue that such a result is constitutional due to the nature of the specific crime committed. Defendants cite Skoien, 614 F.3d at 645 and Smith, 742 F.Supp.2d at 869 in support of the argument that § 922(g)(9) is not necessarily a lifetime ban as § 921(a)(33)(b)(ii) provides relief to some individuals, but even if it is, it remains constitutional. The court in Skoien acknowledged that the statute tolerates different outcomes for persons convicted in different states, but noted that this is true of all situations in which a firearms disability or other adverse consequence depends on state law and this variability does not call into question federal firearms limits based on state convictions that have been left in place under the states' widely disparate approaches to restoring civil rights. The court in Smith reasoned that:

> It is clear from the federal law that the majority of domestic violence offenders will not regain their firearms possession right. However, there are procedures for the restoration of the right . . . It is up to state legislatures to constrict or expand the ease with which convicted misdemeanants may apply for a receive relief under these measures.

The Court finds Defendants' arguments, and the case law, to be persuasive that § 922(g)(9) is a presumptively lawful categorical ban on firearm possession. Keeping guns out of the hands of those convicted of domestic violence fits squarely into the prohibitions noted by Heller. Plaintiffs, as convicted domestic violence

19

misdemeanants, fall within that categorical ban, thus the Second Amendment does not apply to them. Indeed, Plaintiffs themselves do not argue against the extensive case law that has found § 922(g)(9) to be presumptively lawful.

Upon determining that the statute is presumptively lawful, a court may end its inquiry there. See e.g. White, 593 F.3d at 1206 (holding 922(g)(9) to be presumptively lawful and ending its inquiry there); Smith, 742 F. Supp. at 859 (discussing how some courts have found 922(g)(9) to be presumptively constitutional and end their analysis there, while other courts conduct an individual analysis of the statutory section at issue, determine the appropriate level of constitutional scrutiny to apply, and then scrutinize the statute in light of the facts before the court). Thus because this Court finds that § 922(g)(9) warrants inclusion on Heller's list of presumptively lawful longstanding prohibitions on the right to bear arms, no further constitutional scrutiny is required.

The SAC also attempts to plead an as-applied challenge. To raise a successful as-applied challenge, a plaintiff must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. United States v. Barton, 633 F.3d 168, 174 (3rd Cir. 2011). The SAC describes Plaintiffs' convictions as "minor," yet domestic violence misdemeanants are, by statutory definition, violent criminals. Smith, 742 F.Supp.2d at 869. Defendants argue that Plaintiffs have not alleged facts about themselves and their backgrounds that distinguish their circumstances from other domestic violence misdemeanants who are

disqualified from firearm possession under § 922(g)(9).

The Court notes that at oral argument, for the first time, Defendants raised the issue that Plaintiffs' Second Amendment "as-applied" challenge could actually be characterized as a facial overbreadth challenge, because § 922(g)(9) has not been "applied" to Plaintiffs.  Defendants argue that it has not been applied because Plaintiffs have not been arrested and charged with possession of a firearm in violation of § 922(g)(9), which is the route by which challenges to § 922(g)(9) typically reach courts. Defendants stated that Plaintiffs would have standing to bring an overbreadth challenge, but did not explicitly argue that Plaintiffs lack standing to bring an "as-applied" challenge.  Plaintiffs for their part did not dispute the characterization of their challenge as being one of overbreadth, though the SAC pleads that the statute is unconstitutional as applied to them, not that Congress overreached by creating a perpetual disqualification for persons convicted of misdemeanor domestic violence.

Such an overbreadth argument was advanced by the defendant in Skoien, 614 F.3d at 644-45.  The Seventh Circuit ultimately declined to reach this argument because it found that the statute was properly applied to the defendant, and thus he was not able to obtain relief based on arguments that a differently situated person might present.  Id. at 945.  Likewise, the defendant in Smith, 742 F.Supp.2d at 868-69, argued that the difficulty of securing a pardon or expungement under either state or federal law, § 922(g)(9) operates as a complete ban on firearm ownership in perpetuity.  The Smith court held that even assuming the defendant was permanently banned from future firearm possession, § 922(g)(9)

was reasonably tailored to accomplish a compelling government interest.

Here, the parties did not engage in extensive argument over whether the SAC presents an overbreadth or as-applied challenge, and Defendants did not brief the issue in their motion to dismiss or reply briefs. However, in the Court's view the characterization of the precise nature of Plaintiffs' Second Amendment challenge does not change the outcome. Whether this Court views the SAC as bringing an as-applied challenge or an overbreadth challenge, the Court does not find that Plaintiffs have stated a claim for violation of the Second Amendment. The Court finds that § 922(g)(9) is a presumptively lawful categorical ban under Heller, and extends the Ninth Circuit's ruling in Vongxay to hold that § 922(g)(9) does not violate the Second Amendment as applied to Plaintiffs, convicted domestic violence misdemeanants. Plaintiffs have not set forth facts to rebut that presumption of lawfulness, distinguishing them from other domestic violence misdemeanants sufficiently to state an as-applied or overbreadth challenge. Accordingly, Plaintiffs' have not stated a claim for violation of the Second Amendment. Plaintiffs have already amended the complaint twice and further amendment would be futile. Accordingly the dismissal is with prejudice.

III.ORDER

The Motion to Dismiss is GRANTED, and Plaintiffs' SAC is DISMISSED, WITH PREJUDICE. The March 21, 2012 hearing on Plaintiffs motion for summary judgment is vacated.

IT IS SO ORDERED.

Dated: February 28, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

22

Donald E.J. Kilmer, Jr., (SBN: 179986)
LAW OFFICES OF DONALD KILMER
A Professional Corporation
1645 Willow Street, Suite 150
San Jose, California 95125
Telephone:    408/264-8489
Facsimile:    408/264-8487
E-Mail:       Don@DKLawOffice.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ENOS, JEFF BASTASINI,  LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON and VERNON NEWMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation,<br><br>Defendants. | CASE NO.: 2:10-CV-02911-JAM-EFB<br><br>SECOND AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE/DECLARATORY RELIEF<br><br>VIOLATIONS OF THE SECOND AMENDMENT OF THE UNITED STATES CONSTITUTION<br><br>18 U.S.C. § 921 *et seq.*<br>18 U.S.C. § 922 *et seq.*<br>18 U.S.C. § 925A<br>28 U.S.C. § 2412<br>42 U.S.C. § 1988 |

## PARTIES

1.     Plaintiff RICHARD ENOS, is an individual who is a citizen/resident of the State of California.  ENOS lives in San Joaquin County.

2.     Plaintiff JEFF BASTASINI, is an individual who is a citizen/resident of the State of California.

3.     Plaintiff LOUIE MERCADO, is an individual who is a citizen/resident of the State of California.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

4.  Plaintiff WALTER GROVES, is an individual who is a citizen/resident of the State of California.

5.  Plaintiff MANUEL MONTEIRO, is an individual who is a citizen/resident of the State of California.

6.  Plaintiff EDWARD ERIKSON, is an individual who is a citizen/resident of the State of California.

7.  Plaintiff VERNON NEWMAN, is an individual who is a citizen/resident of the State of California.

8.  Defendant ERIC HOLDER is the United States Attorney General and is charged with interpretation and enforcement of 18 U.S.C. §§ 921 *et seq.* and 922 *et seq.*

9.  Defendant ROBERT MUELLER, III is the Director of the Federal Bureau of Investigation and is charged with interpretation and enforcement of 18 U.S.C. §§ 921 *et seq.* and 922 *et seq.*

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the lawsuit because the action arises under 18 U.S.C. §§ 921 *et seq.*, 922 *et seq.* and 925A.

11. As this action arises under the United States Constitution this Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

12. As the Plaintiffs are seeking declaratory relief, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202.

13. Venue for this action is properly in this District pursuant to 28 U.S.C. § 1391.

14. All conditions precedent, including exhaustion of administrative remedies where required, have been performed, have occurred, are futile or unnecessary where the government infringes on a fundamental right.

## FACTS

15. The State of California works in conjunction with the Federal Government to interpret statutes and implementing regulations that restrict the "right to

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder          Page 2 of 17          2ND Amended Complaint/Decl Relief

30

1  keep and bear arms" of people convicted of Misdemeanor Crimes of Domestic

2  Violence.

3  16.   The Federal Government's definition of Misdemeanor Crimes of Domestic

4  Violence is found at 18 U.S.C. § 921(a)(33):

5  (33) (A) Except as provided in subparagraph (C), the term "misdemeanor
   crime of domestic violence" means an offense that--
6
        (i) is a misdemeanor under Federal or State law; and
7
        (ii) has, as an element, the use or attempted use of physical force, or
8  the threatened use of a deadly weapon, committed by a current or former
9  spouse, parent, or guardian of the victim, by a person with whom the victim
   shares a child in common, by a person who is cohabiting with or has
10 cohabited with the victim as a spouse, parent, or guardian, or by a person
11 similarly situated to a spouse, parent, or guardian of the victim.

12     (B) (i) A person shall not be considered to have been convicted of such
   an offense for purposes of this chapter [18 USCS § § 921 et seq.], unless--
13
        (I) the person was represented by counsel in the case, or knowingly
14 and intelligently waived the right to counsel in the case; and

15      (II) in the case of a prosecution for an offense described in this
   paragraph for which a person was entitled to a jury trial in the jurisdiction in
16 which the case was tried, either

17      (aa) the case was tried by a jury, or

18      (bb) the person knowingly and intelligently waived the right to have
   the case tried by a jury, by guilty plea or otherwise.
19
        (ii) A person shall not be considered to have been convicted of such an
20 offense for purposes of this chapter [18 USCS §§ 921 et seq.] if the
21 conviction has been expunged or set aside, or is an offense for which the
   person has been pardoned or has had civil rights restored (if the law of the
22 applicable jurisdiction provides for the loss of civil rights under such an
23 offense) unless the pardon, expungement, or restoration of civil rights
   expressly provides that the person may not ship, transport, possess, or
24 receive firearms.

25 17.   It is a federal criminal offense for any person, including a federally licensed

26 firearm dealer, to sell or dispose of any firearm to a person who has been

27 convicted of a Misdemeanor Crime of Domestic Violence. 18 U.S.C. § 922(d)(9).

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

18. It is federal criminal offense for any person who has been convicted of a Misdemeanor Crime of Domestic Violence to possess a firearm. 18 U.S.C. § 922(g)(9).

19. Thus Federal Law imposes a lifetime ban on the "right to keep and bear arms" for persons convicted of Misdemeanor Crimes of Domestic Violence, subject to the individual states' power to restore these fundamental civil rights under state law.

20. Federal Law provides a means for felons to have their "right to keep and bear arms" restored under procedures promulgated and implemented by the Attorney General. 18 U.S.C. § 925(c).

21. California Penal Code § 12021(c)(1) sets forth a list of specific crimes that subject a person convicted of certain misdemeanors to a ten (10) year prohibition against owning, possessing and purchasing firearms (and ammunition). This list includes, but is not limited to the following Misdemeanor Crimes of Domestic Violence:

   a. Battery Against a Spouse/Cohabitant. CA Penal Code § 243(e).

   b. Corporal Injury to Spouse/Cohabitant. CA Penal Code § 273.5.

22. Pursuant to Penal Code § 12021(c)(1), the State of California has clearly and unequivocally set forth a policy of limiting firearms prohibitions, for persons convicted of Misdemeanor Crimes of Domestic Violence, to a ten (10) year period such that by the passage of time the misdemeanants' "right to keep and bear arms" is restored, without qualification, by operation of law.

23. California Penal Code § 12021(c)(3) also provides the means for a person convicted of a Misdemeanor Crime of Domestic Violence, prior to the date the state law went into effect, to have a Superior Court Judge restore the fundamental "right to keep and bear arms" on a case by case basis.

24. Even though The State of California has a policy of restoring the "right to keep and bear arms" through a hearing process and by operation of law

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1 (through the passage of time), the Federal Government refuses to recognize

2 California's restoration of rights and rehabilitation policies.

3 25. Some time during or prior to 2004, the Federal Government informed the

4 State of California that the federal government would not recognize that

5 State's restoration of gun rights procedures and that California was required

6 to deny firearms purchases and possession of firearms and ammunition to all

7 persons convicted of misdemeanor crimes of domestic violence under the

8 supremacy clause of the Constitution and the Federal Government's

9 interpretation of the 18 U.S.C. §§ 921, 922 *et seq.*

10 26. As a direct consequence of the Federal Government's refusal to recognize

11 California's restoration and rehabilitation policies, Plaintiffs herein (and all

12 other persons similarly situated) continue to be subject to a lifetime

13 prohibition of the "right to keep and bear arms" under Federal Law.

14 27. This interpretation of the law by the Federal Government results in three (3)

15 wrongful and unconstitutional consequences:

16 a. Plaintiffs (and all other persons similarly situated) are subject to

17 federal criminal prosecution if they attempt to exercise their

18 fundamental "right to keep and bear arms" after the State of California

19 has restored their rights.

20 b. Plaintiffs (and all other persons similarly situated) cannot lawfully

21 purchase a firearm to exercise their fundamental "right to keep and

22 bear arms" because they cannot pass the background check required by

23 state and federal law.

24 c. Plaintiffs, (and all other persons similarly situated) are denied a federal

25 statutory remedy to restore their "right to keep and bear arms" even as

26 convicted felons have a statutory remedy to restore their rights under

27 18 U.S.C. § 925(c), thus resulting in an irrational scheme of denying

28 fundamental rights to persons convicted of minor crimes.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

33

28. Plaintiff ENOS:

    a.    On or about July 15, 1991, Plaintiff RICHARD ENOS plead *nolo contendere* and was convicted of a misdemeanor violation of California Penal Code § 273.5 (a).

    b.    In 1993 the California Legislature amended Penal Code § 12021 and added Penal Code § 273.5 to the list of misdemeanors which prohibit a person from acquiring/possessing a firearm for 10 years after the date of conviction.

    c.    On September 13, 1994, the Congress passed the Violence Against Women Act, and in 1996 Congress amended the act to impose a lifetime prohibition against the acquisition/possession of firearms by misdemeanants convicted of Domestic Violence. See: 18 U.S.C. §§ 921 and 922 *et seq.*

    d.    In March of 1999, Plaintiff RICHARD ENOS, petitioned for a record clearance under Penal Code § 1203.4.

    e.    On May 25, 1999, Plaintiff RICHARD ENOS's petition was granted by the Honorable Ray E. Cunningham, Superior Court Judge. Plaintiff's plea of guilty was withdrawn, a plea of not guilty was entered and the court dismissed the case.

    f.    On May 12, 2000, Plaintiff RICHARD ENOS filed a PETITION FOR RESTORATION OF CIVIL RIGHTS (FIREARM POSSESSION).

    g.    On Jun 16, 2000, the PETITION FOR RESTORATION OF CIVIL RIGHTS (FIREARM POSSESSION) was granted by the Honorable Thang N. Barrett.

    h.    In February of 2001, Plaintiff RICHARD ENOS caused a letter to be sent to the California Department of Justice referencing the order by Judge Barrett restoring his rights. At that point in time the State of California had cleared RICHARD ENOS to own/possess firearms.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

i.    In August of 2004, Plaintiff RICHARD ENOS was denied a firearm purchase and advised by the State of California that the denial was being maintained by U.S. Department of Justice, Federal Bureau of Investigation, National Instant Criminal Background Check System.

j.    As of August 29, 2011, Plaintiff RICHARD ENOS is <u>permitted</u> to acquire and possess firearms under the laws of the State of California.

k.    As of August 29, 2011, Plaintiff RICHARD ENOS is <u>prohibited</u> from acquiring and possessing firearms due to threat of criminal prosecution under federal law.

l.    But for Defendants' wrongful interpretation of the federal laws regulating firearm possession and purchase by domestic violence misdemeanants, Plaintiff RICHARD ENOS would acquire, keep and bear arms for, among other lawful purposes, self-defense in his home.

29.    Plaintiff BASTASINI:

a.    On or about March 25, 1991, Plaintiff BASTASINI plead *nolo contendre* in a Santa Clara County Superior Court to two counts of a misdemeanor crime of domestic violence under Penal Code §§ 273.5 and 242.  He was not represented by counsel.

b.    In 1993 the California Legislature amended Penal Code § 12021 and added Penal Code § 273.5 and 242 to the list of misdemeanors which prohibit a person from acquiring/possessing a firearm for 10 years after the date of conviction.

c.    On September 13, 1994, the Congress passed the Violence Against Women Act, and in 1996 Congress amended the act to impose a lifetime prohibition against the acquisition/possession of firearms by misdemeanants convicted of Domestic Violence.  See: 18 U.S.C. §§ 921 and 922 *et seq.*

d.    On or about August 21, 2000, Plaintiff BASTASINI, petitioned for a

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1     record clearance under Penal Code § 1203.4.

2   e.     On or about September 20, 2000, the Superior Court of Santa Clara

3         County granted Plaintiff BASTASINI's petition under Penal Code §

4         1203.4. Plaintiff's plea was withdrawn, a plea of not guilty was entered

5         and the court dismissed the case.

6   f.     Subsequent to California's restoration of his right to "keep and bear

7         arms" under the California law, Plaintiff BASTASINI obtained a

8         firearm permit from the California Bureau of Security and

9         Investigative Services.

10   g.     On or about February 16, 2006, Plaintiff BASTASINI was informed

11         that his Firearm Permit was being revoked under the lifetime

12         prohibition imposed by federal law for his conviction on March 25, 1991.

13   h.     On July 11, 2011, Plaintiff BASTASINI applied for a firearm purchase

14         at federally licensed firearm dealer. Plaintiff correctly filled out the

15         ATF Form 4473 (5300.9) and truthfully answered "YES" to quesiton

16         11.i.

17   i.     On July 18, 2011, Plaintiff BASTASINI was denied a firearm purchase.

18         Upon making an inquiry to the California Department of Justice for the

19         reason for the denial, BASTASINI was informed that federal law

20         prohibited his clearance to purchase the gun and that he should direct

21         his questions to federal authorities.

22   j.     As of August 29, 2011, Plaintiff BASTASINI is <u>permitted</u> to acquire

23         and possess firearms under the laws of the State of California.

24   k.     As of August 29, 2011, Plaintiff BASTASINI is <u>prohibited</u> from

25         acquiring and possessing firearms due to threat of criminal prosecution

26         under federal law.

27   l.     But for Defendants' wrongful interpretation of the federal laws

28         regulating firearm possession and purchase by domestic violence

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    misdemeanants, Plaintiff BASTASINI would acquire, keep and bear

2    arms for, among other lawful purposes, self-defense in his home.

3    30.    Plaintiff MERCADO:

4        a.    Plaintiff LOUIE MERCADO plead no contest (and/or guilty) in

5            Sacramento Superior Court to a  misdemeanor charge of California

6            Penal Code § 273.5 on December 17, 1990.  He was represented by

7            counsel.

8        b.    In 1993 the California Legislature amended Penal Code § 12021 and

9            added Penal Code § 273.5 and 242 to the list of misdemeanors which

10           prohibit a person from acquiring/possessing a firearm for 10 years after

11           the date of conviction.

12       c.    On September 13, 1994, the Congress passed the Violence Against

13           Women Act, and in 1996 Congress amended the act to impose a lifetime

14           prohibition against the acquisition/possession of firearms by

15           misdemeanants convicted of Domestic Violence.  See: 18 U.S.C. §§ 921

16           and 922 *et seq.*

17       d.    On or about December 18, 2001, Plaintiff MERCADO petitioned the

18           Court for relief under Penal Code § 1203.4.

19       e.    On January 18, 2002, the Superior Court of Sacramento granted

20           Plaintiff MERCADO's relief under Penal Code § 1203.4. Plaintiff's plea

21           was withdrawn, a plea of not guilty was entered and the court dismissed

22           the case.

23       f.    Subsequent to California's restoration of his right to "keep and bear

24           arms" under the California law, Plaintiff MERCADO obtained a

25           firearm permit from the California Bureau of Security and

26           Investigative Services.

27       g.    On or about May 1, 2006, Plaintiff MERCADO was informed that his

28           Firearm Permit was being revoked under the lifetime prohibition

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1     imposed by federal law for his conviction on December 17, 1990.

2     h.    On July 12, 2011, Plaintiff MERCADO applied for a firearm purchase

3           at federally licensed firearm dealer.  Plaintiff correctly filled out the

4           ATF Form 4473 (5300.9) and truthfully answered "YES" to quesiton

5           11.i.

6     i.    On July 12, 2011, Plaintiff MERCADO was denied a firearm purchase.

7           Upon making an inquiry to the dealer, Plaintiff was informed that

8           answering "YES" to question 11.i., on ATF form 4473 (5300.9) required

9           the dealer to stop the transaction and deny the purchase.

10    j.    As of August 29, 2011, Plaintiff MERCADO is <u>permitted</u> to acquire and

11          possess firearms under the laws of the State of California.

12    k.    As of August 29, 2011, Plaintiff MERCADO is <u>prohibited</u> from

13          acquiring and possessing firearms due to threat of criminal prosecution

14          under federal law.

15    l.    But for Defendants' wrongful interpretation of the federal laws

16          regulating firearm possession and purchase by domestic violence

17          misdemeanants, Plaintiff MERCADO would acquire, keep and bear

18          arms for, among other lawful purposes, self-defense in his home.

19 31.  Plaintiff GROVES:

20    a.    Plaintiff WALTER GROVES plead no contest (and/or guilty) in a

21          Monterey County Superior Court to a misdemeanor charge of

22          California Penal Code § 273.5 on January 12, 1990.  He was

23          represented by counsel.

24    b.    In 1993 the California Legislature amended Penal Code § 12021 and

25          added Penal Code § 273.5 and 242 to the list of misdemeanors which

26          prohibit a person from acquiring/possessing a firearm for 10 years after

27          the date of conviction.

28    c.    On September 13, 1994, the Congress passed the Violence Against

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder                    Page 10 of 17        2ND Amended Complaint/Decl Relief

38

1    Women Act, and in 1996 Congress amended the act to impose a lifetime

2    prohibition against the acquisition/possession of firearms by

3    misdemeanants convicted of Domestic Violence.  See: 18 U.S.C. §§ 921

4    and 922 *et seq.*

5    d.    On or about January 27, 1999, Plaintiff GROVES petitioned the Court

6          for relief under Penal Code § 1203.4.

7    e.    On April 22, 1999 the Superior Court of Monterey County granted

8          Plaintiff GROVES'relief under Penal Code § 1203.4.  Plaintiff's plea was

9          withdrawn, a plea of not guilty was entered and the court dismissed the

10         case.

11   f.    On or about September 26, 2005, Plaintiff GROVES was denied a

12         firearm purchase.  He was informed that federal law prohibited

13         California from clearing his firearm purchase.

14   g.    On or about July 18, 2011, Plaintiff GROVES again attempted to

15         purchase a firearm, but the federally licensed firearms dealer refused to

16         complete the application process because he truthfully answered "YES"

17         to question 11.i., of the ATF Form 4473 (5300.9).

18   h.    As of August 29, 2011, Plaintiff GROVES is <u>permitted</u> to acquire and

19         possess firearms under the laws of the State of California.

20   i.    As of August 29, 2011, Plaintiff GROVES is <u>prohibited</u> from acquiring

21         and possessing firearms due to threat of criminal prosecution under

22         federal law.

23   j.    But for Defendants' wrongful interpretation of the federal laws

24         regulating firearm possession and purchase by domestic violence

25         misdemeanants, Plaintiff GROVES would acquire, keep and bear arms

26         for, among other lawful purposes, self-defense in his home.

27   32.   Plaintiff MONTEIRO:

28   a.    Plaintiff MANUEL MONTEIRO plead no contest (and/or guilty) in

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

39

1   Santa Clara County Superior Court to a  misdemeanor charge of

2   California Penal Code § 273.5 on May 27, 1992.

3   b.   In 1993 the California Legislature amended Penal Code § 12021 and

4        added Penal Code § 273.5 to the list of misdemeanors which prohibit a

5        person from acquiring/possessing a firearm for 10 years after the date of

6        conviction.

7   c.   On September 13, 1994, Congress passed the Violence Against Women

8        Act, and in 1996 Congress amended the act to impose a lifetime ban on

9        the acquisition/possession of firearms by misdemeanants convicted of

10       Domestic Violence. 18 U.S.C. §§ 921 and 922 *et seq.*

11  d.   On or about September 1, 1995 Plaintiff MONTEIRO requested relief

12       under Penal Code § 1203.4.

13  e.   On October 3, 1995 the Superior Court of Santa Clara County granted

14       Plaintiff MONTEIRO's relief under Penal Code § 1203.4.  Plaintiff's

15       plea was withdrawn, a plea of not guilty was entered and the court

16       dismissed the case.

17  f.   On or about July 14, 2011, Plaintiff MONTEIRO was denied a firearm

18       purchase.  In a letter of explanation from the California Department of

19       Justice, Plaintiff was informed that the denial was based on the Federal

20       Brady Act.

21  g.   As of August 29, 2011, Plaintiff , MONTEIRO is <u>permitted</u> to acquire

22       and possess firearms under the laws of the State of California.

23  h.   As of August 29, 2011, Plaintiff MONTEIRO is <u>prohibited</u> from

24       acquiring and possessing firearms due to threat of criminal prosecution

25       under federal law.

26  i.   But for Defendants' wrongful interpretation of the federal laws

27       regulating firearm possession and purchase by domestic violence

28       misdemeanants, Plaintiff MONTEIRO would acquire, keep and bear

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1 | arms for, among other lawful purposes, self-defense in his home.

2 | 33.     Plaintiff EDWARD ERIKSON:

3 |         a.     On June 3, 1996, Plaintiff ERICKSON plead no contest and/or guilty in
4 |                a Santa Clara County Superior Court to a misdemenaor charge of
5 |                Penal Code § 273.5.

6 |         b.     On October 25, 2006, ERICKSON was granted a petition under Penal
7 |                Code § 1203.4.  His plea was withdrawn, a plea of not guilty was entered
8 |                and the court dismissed the case.

9 |         c.     On or about July 19, 2011, ERICKSON was denied a firearm purchase
10 |               when the dealer refused to process his application for a transfer due to
11 |               his truthful answer of "YES" to question 11.i., on the ATF Form 4473
12 |               (5300.9)

13 |        d.     As of August 29, 2011, Plaintiff ,ERICKSON is <u>permitted</u> to acquire
14 |               and possess firearms under the laws of the State of California.

15 |        e.     As of August 29, 2011, Plaintiff ERICKSON is <u>prohibited</u> from
16 |               acquiring and possessing firearms due to threat of criminal prosecution
17 |               under federal law.

18 |        f.     But for Defendants' wrongful interpretation of the federal laws
19 |               regulating firearm possession and purchase by domestic violence
20 |               misdemeanants, Plaintiff ERICKSON would acquire, keep and bear
21 |               arms for, among other lawful purposes, self-defense in his home.

22 | 34.     Plaintiff VERNON NEWMAN:

23 |         a.     On September 17, 1998, NEWMAN plead guilty and/or no contest in a
24 |                Santa Clara Superior Court to a misdemeanor charge of Penal Code §
25 |                243(e).

26 |         b.     On July 17, 2008, the Superior Court granted NEWMAN's petition
27 |                under Penal Code § 1203.4. His plea was withdrawn, a plea of not guilty
28 |                was entered and the court dismissed the case.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder                Page 13 of 17        2ND Amended Complaint/Decl Relief

41

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

c.   On or about August 1, 2011 NEWMAN was denied a firearm purchase by the California Department of Justice after truthfully answering "YES" to question 11.i., on ATF Form 4473 (5300.9).

d.   As of August 29, 2011, Plaintiff NEWMAN is <u>permitted</u> to acquire and possess firearms under the laws of the State of California.

e.   As of August 29, 2011, Plaintiff NEWMAN is <u>prohibited</u> from acquiring and possessing firearms due to a threat of criminal prosecution under federal law.

f.   But for Defendants' wrongful interpretation of the federal laws regulating firearm possession and purchase by domestic violence misdemeanants, Plaintiff NEWMAN would acquire, keep and bear arms for, among other lawful purposes, self-defense in their homes.

## **FIRST CLAIM - Declaratory Relief**

35.  Paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36.  Pursuant to 18 U.S.C. § 921(a)(33) Plaintiff RICHARD ENOS has not been convicted of a crime of domestic violence under any one of three possible theories:

a.   RICHARD ENOS was not apprized of the possibility of losing his firearm rights when he plead no contest to a misdemeanor crime of Domestic Violence back in 1991, as there was no federal or state law prohibiting Domestic Violence misdemeanants from acquiring/possessing firearms upon conviction.  Therefore he could not make a knowing/intelligent waiver of his right to a trial.

b.   RICHARD ENOS applied for and was granted a restoration of his rights under California Penal Code § 12021(c)(3) by a Superior Court Judge in Santa Clara County California.

1    c.    And finally, the State of California restores the right to possess firearms

2          for Domestic Violence misdemeanants 10 years after conviction, by

3          operation of law.

4    37.   Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive

5          Plaintiff RICHARD ENOS of the "right to keep and bear arms" he would

6          otherwise enjoy if the Defendants correctly applied the law.

7

8                    **SECOND CLAIM – Declaratory Relief**

9    38.   Paragraphs 1 through 34 are incorporated by reference as if fully set forth

10         herein.

11   39.   Pursuant to 18 U.S.C. § 921(a)(33) Plaintiffs JEFF BASTASINI, LOUIE

12         MERCADO, WALTER GROVES and MANUEL MONTEIRO have not been

13         convicted of a crime of domestic violence under any one of two possible

14         theories:

15   a.    JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES and

16         MANUEL MONTEIRO were not apprized of the possibility of losing

17         their firearm rights when they plead no contest to a misdemeanor crime

18         of Domestic Violence as there was no federal or state law prohibiting

19         Domestic Violence misdemeanants from acquiring/possessing firearms

20         upon conviction.  Therefore they could not make a knowing/intelligent

21         waiver of their right to a trial.

22   b.    And, the State of California restores the right to possess firearms for

23         Domestic Violence misdemeanants 10 years after conviction, by

24         operation of law.

25   40.   Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive

26         Plaintiffs JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES and

27         MANUEL MONTEIRO of the "right to keep and bear arms" they would

28         otherwise enjoy if the Defendants correctly applied the law.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

## THIRD CLAIM – Declaratory Relief

41. Paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

42. Pursuant to 18 U.S.C. § 921(a)(33) Plaintiffs EDWARD ERIKSON and VERNON NEWMAN have not been convicted of a crime of domestic violence because California restores the right to possess firearms for Domestic Violence misdemeanants 10 years after conviction, by operation of law.

43. Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive Plaintiffs EDWARD ERIKSON and VERNON NEWMAN of the "right to keep and bear arms" they would otherwise enjoy if the Defendants correctly applied the law.

## FOURTH CLAIM – Second Amendment

44. Paragraphs 1 through 43 are incorporated by reference as if fully set forth herein.

45. The Second Amendment to the United States Constitution provides in part that: *"the right of the people to keep and bear Arms shall not be infringed."*

46. On its face, 18 U.S.C. §§ 921(a)(33), 922(d)(9) and 922(g)(9) violates the Plaintiffs' Second Amendment rights because it imposes a lifetime ban on the exercise of a fundamental constitutional "right to keep and bear arms" after conviction of a minor crime.

47. As applied to the facts of this case, the Defendants' interpretations of 18 U.S.C. §§ 921(a)(33), 922(d)(9) and 922(g)(9) violates the Plaintiffs' Second Amendment rights because it imposes a lifetime ban on the exercise of a fundamental constitutional "right to keep and bear arms" after conviction of a minor crime.

/ / / /

/ / / /

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder                    Page 16 of 17          2ND Amended Complaint/Decl Relief

44

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court will enter judgment as follows:

A.     Declaratory and injunctive relief that all Plaintiffs are not subject to the prohibitions set forth in 18 U.S.C. §§ 922(d)(9) and 922(g)(9).

B.     Declaratory and injunctive relief that 18 U.S.C. §§ 922(d)(9) and 922(g)(9) are unconstitutional on their face and as applied to all Plaintiffs.

C.     Award Plaintiffs their reasonable attorney fees and costs under 28 U.S.C. § 2412, 42 U.S.C. § 1988 and/or 18 U.S.C. § 925A.

D.     Such other and further relief as this Court deems just and proper.

Respectfully Submitted on August 29, 2011,

/s/
Donald E.J. Kilmer, Jr., (SBN: 179986)
LAW OFFICES OF DONALD KILMER
A Professional Corporation
1645 Willow Street, Suite 150
San Jose, California 95125-3030
Telephone:    408/264-8489
Facsimile:     408/264-8487
E-Mail:         Don@DKLawOffice.com

Attorney for Plaintiffs

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

| | | |
|---|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON, VERNON NEWMAN, JEFF LOUGHRAN and WILLIAM EDWARDS, | ) ) ) ) ) ) | Case No. 2:10-CV-2911-JAM-EFB ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' Eric Holder and Robert Mueller, III (collectively "Defendants") Motion to Dismiss (Doc. #11) Plaintiffs' Richard Enos ("Enos"), Jeff Bastasini ("Bastasini"), Louie Mercado ("Mercado"), Walter Groves ("Groves"), Manuel Monteiro ("Monteiro"), Edward Erickson ("Erickson"), Vernon Newman ("Newman"), Jeff Loughran ("Loughran") and William Edwards ("Edwards") First Amended Complaint ("FAC") (Doc. #8). The above-named plaintiffs opposed the motion. A hearing on the motion to dismiss was held on May 4, 2011. At the close of the hearing, the

1

Court dismissed plaintiffs Edwards and Loughran, for improper joinder and venue (Doc. #20) and ordered further briefing on Defendants' supplemental authorities. Having reviewed the additional briefing, and based on the moving papers and oral argument, the Court GRANTS in part and DENIES in part the motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Enos, Bastasini, Mercado, Groves, Monteiro, Erickson, and Newman (collectively "Plaintiffs") have each been convicted of misdemeanor domestic violence in California, and allege that they wish to purchase a gun but are prevented from doing so by federal law. Plaintiffs challenge the government's interpretation of 18 U.S.C. § 922(g)(9), which makes it a federal offense for any person who has been convicted of a misdemeanor crime of domestic violence to possess a firearm, and the government's interpretation of 18 U.S.C. § 922(d)(9), which makes it unlawful to sell a firearm or ammunition to a person who has been convicted of misdemeanor domestic violence. Though California law allows for the restoration of gun rights after a period of ten years from the misdemeanor domestic violence conviction, (see CA Penal Code § 12021(c)(1) and (3)), the FAC alleges that federal law only provides for the restoration of gun rights for those with felony convictions. Accordingly, Plaintiffs allege that federal law creates a lifetime ban on gun ownership for those with misdemeanor domestic violence convictions.

Plaintiffs allege that they were each convicted of misdemeanor domestic violence over ten years ago, and under California law

2

their gun rights have been restored.  Accordingly, they argue that
the federal law barring them from gun ownership is a violation of
their constitutional rights.  Plaintiffs allege that 18 U.S.C.
§ 922(g)(9) and (d)(9) violate their Second, First, Tenth, and
Fifth Amendment rights.  Plaintiffs also seek declaratory and
injunctive relief that they are not subject to the prohibitions set
forth in 18 U.S.C. § 922(d)(9) and 922(g)(9) and that these two
statutes are unconstitutional on their face and as applied to
Plaintiffs.  Defendants argue that most of the plaintiffs lack
standing to challenge the law, and should be dismissed pursuant to
Federal Rules of Civil Procedure 12(b)(1).  Defendants further
argue that the constitutional claims fail under Federal Rules of
Civil Procedure 12(b)(6), for failure to state a claim.

## II. OPINION

### A.   Legal Standard

#### 1.   Rule 12(b)(1) dismissal

A party may move to dismiss an action for lack of subject
matter jurisdiction pursuant to Federal Rules of Civil Procedure
12(b)(1).  When a defendant brings a motion to dismiss for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1), the
plaintiff has the burden of establishing subject matter
jurisdiction.  See Rattlesnake Coalition v. United States Envtl.
Protection Agency, 509 F.3d 1095, 1102, FN 1 (9th Cir. 2007).

#### 2.   Rule 12(b)(6) dismissal

A party may move to dismiss an action for failure to state a
claim upon which relief can be granted pursuant to Federal Rules of
Civil Procedure 12(b)(6).  In considering a motion to dismiss, the

3

court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rules of Civil Procedure 15(a). "Absent prejudice, or a strong showing of any [other relevant] factor[], there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Id.

Generally, the court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. There are two exceptions: when material is attached to the complaint or relied on by the complaint, or when the court takes judicial notice of matters of public record, provided the facts are

4

49

1  not subject to reasonable dispute.  Sherman v. Stryker Corp., 2009

2  WL 2241664 at *2 (C.D. Cal. Mar. 30, 2009) (internal citations

3  omitted).  Here, Plaintiffs request judicial notice of ATF Form

4  4473, the form that must be completed when applying to purchase a

5  gun.  The Court will take judicial notice of this form, as it is a

6  matter of public record.

7      B.  Claims for Relief

8          As threshold matters, Defendants challenge the Court's

9  jurisdiction and Plaintiffs' standing.  Defendants argue that the

10  FAC fails to set forth the jurisdictional basis for seeking a

11  declaration from the Court that their convictions are not

12  misdemeanor crimes of domestic violence under 18 U.S.C.

13  § 921(a)(33).  Section 921(a)(33) defines a "misdemeanor crime of

14  domestic violence" as

15          a misdemeanor that has as an element, the use or
           attempted use of physical force, or the threatened use
16          of a deadly weapon, committed by a current or former
           spouse, parent or guardian of the victim, by a person
17          with whom the victim shares a child in common, by a
           person who is cohabiting with or has cohabited with
18          the victim as a spouse, parent, or guardian, or by a
           person similarly situated to a spouse parent, or
19          guardian of the victim.

20  However, the statute provides that a person shall not be

21  considered to have been convicted of such an offense unless

22  the person was represented by counsel in the case, or

23  knowingly and intelligently waived the right to counsel in

24  the case, and if the prosecution for an offense entitled

25  the person to a jury trial, the case was tried by a jury or

26  the person knowingly and intelligently waived the right to

27  a jury trial, by guilty plea or otherwise. 18 U.S.C.

28  § 921(a)(33)(B)(i).

5

The statute further provides that

a person shall not be considered to have been
convicted of such an offense for purposes of this
chapter if the conviction has been expunged or set
aside, or is an offense for which the person has been
pardoned or has had civil rights restored (if the law
of the applicable jurisdiction provides for the loss
of civil rights under such an offense) unless the
pardon, expungement, or restoration of civil rights,
expressly provides that the person may not ship,
transport, posses, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii).

18 U.S.C. § 922(s) and (t) govern the process for acquiring a

firearms permit.  Under 18 U.S.C. § 925A, any person denied a

firearm pursuant to Sections 922(s) or (t), (1) due to the

provision of erroneous information by any state or political

subdivisions thereof, or by the National Instant Criminal

Background Check System established under Section 103 of the Brady

Handgun Violence Prevention Act; or (2) who was not prohibited from

receipt of a firearm pursuant to subsection (g) or (n) of Section

922, may bring an action against the State or political subdivision

responsible for providing the erroneous information, or responsible

for denying the transfer, or against the United States, as the case

may be, for an order directing that the erroneous information be

corrected or that the transfer be approved, as the case may be.

To the extent that Plaintiffs rely on 18 U.S.C. § 925A as the

jurisdictional basis for the requested declaratory relief,

Defendants argue that the statute would only apply to Enos, as he

is the only plaintiff that the FAC alleges actually attempted to

purchase a gun and was denied due to the National Instant Criminal

Background Check System, maintained by the Department of Justice

and the Federal Bureau of Investigation.  The Declaratory Judgment

Act, 28 USC 2201-02, on its own does not confer federal jurisdiction.  See Nationwide Mut. Ins. Co. v. Liberatore, 408 F.3d 1158, 1161 (9th Cir. 2005).

At oral argument, counsel for Plaintiffs stated that Enos was not the only plaintiff to attempt to purchase a gun, and said he would present further evidence at summary judgment.  However, the FAC is devoid of any such allegations pertaining to the other plaintiffs.  Without allegations that the other plaintiffs attempted to purchase a gun and were denied a permit pursuant to Sections 922(s) or (t), this Court lacks jurisdiction over their claims for declaratory relief under 18 U.S.C. § 925A.  No other jurisdictional basis was alleged in the FAC.  Accordingly the declaratory relief claims brought by plaintiffs Bastasini, Mercado, Groves, Monteiro, Erickson, and Newman are DISMISSED, WITH LEAVE TO AMEND.

Defendants argue that while the Court may have jurisdiction over Enos' claim for declaratory relief, the claim is without merit.  The FAC alleges that because Enos may possess a gun without running afoul of CA Penal Code § 1201(c)(1), his civil rights have been restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  Defendants argue that the language in the statute "civil rights restored" denotes rights accorded to an individual by virtue of his citizenship in a particular state, comprising the right to vote, hold public office, and serve on a jury.  See Metzger v. United States, 3, F.3d 756, 758 (4th Cir. 1993); McGrath v. United States, 60 F.3d 1005 (2d Cir. 1995); United States v. Cassidy, 899 F.2d 543, 549 (6th Cir.).  According to Defendants, because none of these rights were taken away from Enos due to his misdemeanor

conviction, none could be restored.

Enos argues that his civil right to possess a gun was taken away by the state of California, and restored after ten years. Though the Ninth Circuit has previously rejected the argument that a state's restoration of an individual's right to possess firearms constitutes a "restoration of rights" under 18 U.S.C. § 921(a)(33)(B)(ii), in U.S. v. Brailey, 408 F.3d 609 (9th Cir. 2005), Enos contends that Brailey and additional cases raised by Defendants should not be followed since they were decided before the Supreme Court's rulings in District of Columbia v. Heller, 554 U.S. 570 (2008) (holding that the Second Amendment confers and individual right to keep and bear arms), and McDonald v. City of Chicago, 130 S.Ct. 3020 (2010) (holding that the Fourteenth Amendment incorporates the Second Amendment right). Accordingly, Enos may be able to maintain a claim for declaratory relief in light of the shifting legal landscape after Heller and McDonald.

Even if the Court were to find that a civil right was restored, Defendants argue that the statute is written in the plural and only contemplates the restorations of "rights" not the restoration of one right. Enos in turn asserts that the Second Amendment protects multiple rights, the right to keep and the right to bear, firearms.

At this early stage of the pleadings, taking the allegations of the FAC as true, the Court finds that the FAC contains sufficient allegations to maintain Enos' claim for declaratory relief. Accordingly the motion to dismiss Enos' declaratory relief claim is DENIED.

Next, Defendants contest Plaintiffs' standing to challenge the

constitutionality of the federal statutes at issue, arguing that Plaintiffs, with the possible exception of Enos, lack standing to challenge the constitutionality of 18 U.S.C. § 921(a)(33), § 922(d)(9) and § 922(g)(9).

Article III of the United States Constitution limits the jurisdiction of federal court to cases and controversies. See San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996). Federal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record. Id. Standing is an essential, core component of the case or controversy requirement. Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing their standing to sue. Id. To do so, they must demonstrate that they have suffered "an 'injury in fact' to a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to "conjectural" or "hypothetical." Id.

The plaintiffs, other than Enos, lack standing for the same reasons as those discussed above in relation to the Court's jurisdiction. Without allegations in the FAC that Plaintiffs have attempted to purchase a gun and have been denied, or that they face imminent prosecution for possessing a gun, Plaintiffs lack standing. They have not alleged a concrete injury or an imminent threat of prosecution, as FAC merely alleges that Plaintiffs wish to purchase guns. The FAC lacks allegations that 18 U.S.C. § 921(a)(33), § 922(d)(9) and § 922(g)(9) have been applied to Plaintiffs. Accordingly, the Court finds that only Enos has standing to challenge the constitutionality of the aforementioned

9

statutes, and the other plaintiffs claims are dismissed without prejudice.

### 1. Second Amendment

The FAC alleges that 18 U.S.C. §§ 921(a)(33), 922(d)(9), and 922(g)(9) violate Enos' Second Amendment right to keep and bear arms because together they impose a lifetime ban on gun ownership after a domestic violence misdemeanor conviction.  Defendants argue that the FAC fails to state a claim for a Second Amendment violation, because statutes prohibiting felons or misdemeanants from possessing firearms have been found lawful under the Second Amendment.  See, e.g., United States v. Vongxay, 594 F.3d 1111 (9th Cir. 2010) (holding that 18 U.S.C. § 922(g)(1), statute prohibiting felons from possessing firearms, did not violate the Second Amendment); United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) (holding that 18 U.S.C. 922(g) is generally proper under the Second Amendment); United States v. Booker, 2011 WL 1631947 that (1st Cir. 2011) (holding that 18 U.S.C. § 922(g)(9) is a presumptively lawful regulatory measure); United States v. White, 593 F.3d 1199 (11th Cir. 2010) (same).  Enos distinguishes his claim from Vongxay, Skoien, Booker, and White in that he seeks to challenge 18 U.S.C. § 922(g)(9) (and 18 U.S.C. § 922(d)(9) and 18 U.S.C. § 921(a)(33))only to the extent that they impose a lifetime ban on the right to own a gun without possibility of restoring the right, despite restoration of this right in California.  Enos does not challenge the 18 U.S.C. § 922(g)(9)'s constitutionality insofar as it restricts his gun ownership for ten years following his misdemeanor domestic violence conviction.

The First Circuit recently held in Booker, 2011 WL 1631947

that section 922(g)(9) "fits comfortably among the categories of regulations that Heller suggested would be presumptively lawful." Id. at *10.  The First Circuit rejected Booker's arguments that section 922(g)(9) violates the Second Amendment, finding that there is a substantial relationship between section 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home.  Id. at *11.

Though the First Circuit found section 922(g)(9) to be facially valid, Enos in his supplemental briefing urges the Court not to dismiss his Second Amendment claim at this stage, arguing that he brings an as-applied challenge.  He only argues section 922(g)(9) is unconstitutional to the extent that it is interpreted, along with section 921(a)(33)(B)(ii) as a lifetime ban on gun ownership without the possibility of restoring gun rights.  Based on the pleadings and oral argument, the Court will not dismiss Enos' Second Amendment claim at this stage, as he may be able to maintain a claim.  Accordingly, the motion to dismiss Enos' Second Amendment claim is DENIED.

### 2.   First Amendment

The FAC alleges that 18 U.S.C. § 922(g)(9), 18 U.S.C. § 922(d)(9) and 18 U.S.C. § 921 (a)(33) violate Enos' First Amendment rights, because they impose a lifetime ban on the exercise of a fundamental constitutional right for a minor crime without providing a statutory remedy to petition the government for restoration of that right.  However, as Defendants argue, these allegations fail to state a claim.  Defendants contend that the First Amendment claim is devoid of merit, because it contains no

11

allegations that the government has restricted Plaintiffs right to speech and to petition the government for redress. Furthermore, gun possession is not speech. See Nordyke v. King 319 F.3d 1185, 1190 (9th Cir. 2003). Plaintiffs conceded the weakness of this claim in the briefs and at oral argument, by admitting that they advanced the claim only in hopes of making new law. However, Enos has failed to state a claim for violation of the First Amendment, and his First Amendment claim is DISMISSED, WITH PREJUDICE.

### 3. Tenth Amendment

The FAC alleges that 18 U.S.C. § 922(g)(9) 18 U.S.C. § 922(d)(9) and 18 U.S.C. § 921 (a)(33) violate the Tenth Amendment, by usurping the States' powers to define and provide for the rehabilitation of minor public offenses.[1] Defendants move to dismiss the Tenth Amendment claim, arguing that the Ninth Circuit in United States v. Andaverde, 64 F.3d 1305 (9th Cir. 1995) held that Congress may regulate possession of firearms without violating the Tenth Amendment. Though Andaverde discussed 18 U.S.C. § 922(g)(1) (regulating the possession of firearms by felons), courts addressing 18 U.S.C. § 922(g)(9) have likewise found the statute to be constitutional under the Tenth Amendment. See, e.g., Fraternal Order of Police v. United States, 173 F. 3d 898 (D.C. Cir. 1999); Hiley v. Barret, 155 F.3d 1276 (11th Cir. 1998). Accordingly, Enos' claim for violation of the Tenth Amendment is

---

[1] The Court has considered Bond v. United States, 2011 WL 2369334 (2011), the supplemental authority recently submitted by counsel for Plaintiffs (Doc. #23), and finds it unpersuasive. Bond is unrelated to the issue of firearms regulation under the Tenth Amendment, and to the extent that Plaintiffs' cite it in support of their argument for standing, it is entirely distinguishable from the case at hand, because the plaintiff in Bond was convicted and incarcerated under the law she challenged on Tenth Amendment grounds.

57

DISMISSED, WITH PREJUDICE.

4.   Fifth Amendment

The FAC alleges that 18 U.S.C. § 922(g)(9), 18 U.S.C. § 922(d)(9) and 18 U.S.C. § 921 (a)(33) violate the Fifth Amendment by imposing a lifetime ban on the right to own a gun without providing a statutory remedy for restoration of that right. Defendants' oppose this claim, arguing that 18 U.S.C. § 925(c) allows any person to apply for relief from the Attorney General. See Palma v. United States, 228 F.3d 323, 327-28 (3d Cir. 2000) (stating that persons convicted of a misdemeanor crime of domestic violence may apply for relief under 18 U.S.C. § 925(c)). Enos' opposition brief states that he is asserting an equal protection argument, but does not set forth allegations or argument in support of this claim or in opposition to Defendants' arguments. Accordingly, the Fifth Amendment claim is DISMISSED, WITH PREJUDICE.

III. ORDER

For the reasons set forth above, Defendants' motion to dismiss the FAC is GRANTED in part and DENIED in part. Bastasini's, Mercado's, Groves', Monteiro's, Erickson's, and Newman's declaratory relief and constitutional claims are dismissed, with leave to amend.[2] Enos' First Amendment, Tenth Amendment and Fifth

---

[2] Because the Court found that as pled, Bastasini, Mercado, Groves, Monteiro, Erickson, and Newman lack standing to plead the constitutional claims, the Court only reached the merits of Enos' constitutional claims, and dismissed the remaining Plaintiffs' constitutional claims. However, remaining plaintiffs are advised that the Court will look with disfavor on any attempt to re-plead the First, Tenth and Fifth Amendment claims that were dismissed with prejudice as to Enos.

13

1   Amendment claims are dismissed, with prejudice.  The motion to

2   dismiss is denied as to dismissal of Enos' declaratory relief and

3   Second Amendment claims.  Plaintiffs must file a Second Amended

4   Complaint within twenty (20) days of the date of this order.

5

6       IT IS SO ORDERED.

7   Dated: July 7, 2011

8                               JOHN A. MENDEZ,
                                UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | Donald E.J. Kilmer, Jr., (SBN: 179986)
LAW OFFICES OF DONALD KILMER
2 | A Professional Corporation
1645 Willow Street, Suite 150
3 | San Jose, California 95125
Telephone:    408/264-8489
4 | Facsimile:    408/264-8487
E-Mail:        Don@DKLawOffice.com
5 |
Attorney for Plaintiffs
6 |

7 |

8 |
**UNITED STATES DISTRICT COURT**
9 |
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
10 |

11 | RICHARD ENOS, JEFF BASTASINI,          CASE NO.: 2:10-CV-02911-JAM-EFB
LOUIE MERCADO, WALTER GROVES,
12 | MANUEL MONTEIRO, EDWARD               FIRST AMENDED COMPLAINT
ERIKSON, VERNON NEWMAN, JEFF           AND REQUEST FOR
13 | LOUGHRAN and WILLIAM EDWARDS,         INJUNCTIVE/DECLARATORY RELIEF

14 |                                       VIOLATIONS OF THE FIRST, SECOND,
            Plaintiffs,                    FIFTH, and TENTH AMENDMENTS OF
15 |                                       THE UNITED STATES CONSTITUTION

16 |            vs.                         18 U.S.C. § 921 *et seq.*

17 | ERIC HOLDER, as United States Attorney 18 U.S.C. § 922 *et seq.*
General, and ROBERT MUELLER, III, as
18 | Director of the Federal Bureau of      18 U.S.C. § 925A
Investigation,
19 |                                       28 U.S.C. § 2412
            Defendants.
20 |                                       42 U.S.C. § 1988

21 |

22 |                              **PARTIES**

23 | 1.      Plaintiff RICHARD ENOS, is an individual who is a citizen/resident of the State of

24 | California.  ENOS lives in San Joaquin County.

25 | 2.      Plaintiff JEFF BASTASINI, is an individual who is a citizen/resident of the State of

26 | California.

27 | 3.      Plaintiff LOUIE MERCADO, is an individual who is a citizen/resident of the State of

28 | California.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder                    Page 1 of 16              1st Amended Complaint/Decl Relief

60

1  4.  Plaintiff WALTER GROVES, is an individual who is a citizen/resident of the State of

2     California.

3  5.  Plaintiff MANUEL MONTEIRO, is an individual who is a citizen/resident of the State of

4     California.

5  6.  Plaintiff EDWARD ERIKSON, is an individual who is a citizen/resident of the State of

6     California.

7  7.  Plaintiff VERNON NEWMAN, is an individual who is a citizen/resident of the State of

8     California.

9  8.  Plaintiff JEFF LOUGHRAN, is an individual who is a citizen/resident of the State of

10    North Dakota.

11 9.  Plaintiff WILLIAM EDWARDS, is an individual who is a citizen/resident of the State of

12    California.

13 10. Defendant ERIC HOLDER is the United States Attorney General and is charged with

14    interpretation and enforcement of 18 U.S.C. §§ 921 *et seq*. and 922 *et seq*.

15 11. Defendant ROBERT MUELLER, III is the Director of the Federal Bureau of

16    Investigation and is charged with interpretation and enforcement of 18 U.S.C. §§ 921 *et*

17    *seq*. and 922 *et seq*.

18                    **JURISDICTION AND VENUE**

19 12. This Court has jurisdiction over the lawsuit because the action arises under 18 U.S.C. §§

20    921 *et seq*., 922 *et seq*. and 925A.

21 13. As this action arises under the United States Constitution this Court also has jurisdiction

22    pursuant to 28 U.S.C. § 1331.

23 14. As the Plaintiffs are seeking declaratory relief, this Court has jurisdiction over this action

24    pursuant to 28 U.S.C. §§ 2201 and 2202.

25 15. Venue for this action is properly in this District pursuant to 28 U.S.C. § 1391.

26 16. All conditions precedent, including exhaustion of administrative remedies where

27    required, have been performed, have occurred, are futile or unnecessary where the

28    government infringes on a fundamental right.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder                Page 2 of 16        1st Amended Complaint/Decl Relief

61

17. The State of California works in conjunction with the Federal Government to interpret statutes and implementing regulations that restrict the "right to keep and bear arms" of people convicted of Misdemeanor Crimes of Domestic Violence.

18. The Federal Government's definition of Misdemeanor Crimes of Domestic Violence is found at 18 U.S.C. § 921(a)(33):

(33) (A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that--

(i) is a misdemeanor under Federal or State law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

(B) (i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter [18 USCS § § 921 et seq.], unless--

(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and

(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

(aa) the case was tried by a jury, or

(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

(ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter [18 USCS §§ 921 et seq.] if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

/ / / /

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder     Page 3 of 16     1st Amended Complaint/Decl Relief

62

19. It is federal criminal offense for any person to sell or otherwise dispose of any firearm to a person who has been convicted of a Misdemeanor Crime of Domestic Violence. 18 U.S.C. § 922(d)(9).

20. It is federal criminal offense for any person who has been convicted of a Misdemeanor Crime of Domestic Violence to possess a firearm. 18 U.S.C. § 922(g)(9).

21. Thus Federal Law imposes a lifetime ban on the "right to keep and bear arms" for persons convicted of Misdemeanor Crimes of Domestic Violence, subject to the individual states' power to restore this fundamental civil right under state law.

22. Federal Law also provides a means for felons to have their "right to keep and bear arms" restored under procedures promulgated and implemented by the Attorney General. 18 U.S.C. § 925(c).

23. California Penal Code § 12021(c)(1) sets forth a list of specific crimes that subject a person convicted of certain misdemeanors to a ten (10) year prohibition against owning, possessing and purchasing firearms (and ammunition). This list includes, but is not limited to the following Misdemeanor Crimes of Domestic Violence:

   a. Battery Against a Spouse/Cohabitant. CA Penal Code § 243(e).

   b. Corporal Injury to Spouse/Cohabitant. CA Penal Code § 273.5.

24. Pursuant to Penal Code § 12021(c)(1), the State of California has clearly and unequivocally set forth a policy of limiting firearms prohibitions, for persons convicted of Misdemeanor Crimes of Domestic Violence, to a ten (10) year period such that by the passage of time the misdemeanants' "right to keep and bear arms" is restored, without qualification, by operation of law.

25. California Penal Code § 12021(c)(3) also provides the means for a person convicted of a Misdemeanor Crime of Domestic Violence, prior to the date the state law went into effect, to have a Superior Court Judge restore the fundamental "right to keep and bear arms" on a case by case basis.

26. Even though The State of California has a policy of restoring the "right to keep and bear arms" through a hearing process and by operation of law (through the passage of time),

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1 the Federal Government refuses to recognize California's restoration of rights and

2 rehabilitation policies.

3 27. As a direct consequence of the Federal Government's refusal to recognize California's

4 restoration and rehabilitation policies Plaintiffs herein (and all other persons similarly

5 situated) continue to be subject to a lifetime prohibition of the "right to keep and bear

6 arms" under Federal Law.

7 28. This interpretation of the law by the Federal Government results in five (5) wrongful and

8 unconstitutional consequences:

9 a. Plaintiffs (and all other persons similarly situated) are subject to federal criminal

10 prosecution if they attempt to exercise their fundamental "right to keep and bear

11 arms" after the State of California has restored their rights.

12 b. Plaintiffs (and all other persons similarly situated) cannot lawfully purchase a

13 firearm to exercise their fundamental "right to keep and bear arms" because they

14 cannot pass the background check required by state and federal law.

15 c. Plaintiffs (and all other persons similarly situated) are denied a federal statutory

16 remedy to restore their "right to keep and bear arms" resulting in a denial of their

17 right to petition their government for redress of grievances.

18 d. Plaintiffs, as misdemeanants, (and all other persons similarly situated) are denied

19 a federal statutory remedy to restore their "right to keep and bear arms" even as

20 convicted felons have a statutory right to restore their rights under 18 U.S.C. §

21 925(c), thus resulting in a *de jure* denial of equal protection of the law.

22 e. The federal government has usurped the power retained by the State of California,

23 and the people, for defining a misdemeanor crime of domestic violence and

24 defining the procedures for restoration of the "right to keep and bear arms"

25 following a conviction for a misdemeanor crime of domestic violence.

26 29. Plaintiff ENOS:

27 a. On or about July 15, 1991, Plaintiff RICHARD ENOS plead *nolo contendere* and

28 was convicted of a misdemeanor violation of California Penal Code § 273.5 (a).

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

64

b.  In 1993 the California Legislature amended Penal Code § 12021 and added Penal Code § 273.5 to the list of misdemeanors which prohibit a person from acquiring/possessing a firearm for 10 years after the date of conviction.

c.  On September 13, 1994, the Congress passed the Violence Against Women Act, and in 1996 Congress amended the act to impose a lifetime prohibition against the acquisition/possession of firearms by misdemeanants convicted of Domestic Violence.  See: 18 U.S.C. §§ 921 and 922 *et seq.*

d.  In March of 1999, Plaintiff RICHARD ENOS, petitioned for a record clearance under Penal Code § 1203.4.

e.  On May 25, 1999, Plaintiff RICHARD ENOS's petition was granted by the Honorable Ray E. Cunningham, Superior Court Judge. Plaintiff's  plea of guilty was withdrawn, a plea of not guilty was entered and the court dismissed the case.

f.  On May 12, 2000, Plaintiff RICHARD ENOS filed a PETITION FOR RESTORATION OF CIVIL RIGHTS (FIREARM POSSESSION).

g.  On Jun 16, 2000, the  PETITION FOR RESTORATION OF CIVIL RIGHTS (FIREARM POSSESSION) was granted by the Honorable Thang N. Barrett.

h.  In February of 2001, Plaintiff RICHARD ENOS caused a letter to be sent to the California Department of Justice referencing the order by Judge Barrett restoring his rights.  At that point in time the State of California had cleared RICHARD ENOS to own/possess firearms.

i.  In August of 2004, Plaintiff RICHARD ENOS was denied a firearm purchase and advised by the State of California that the denial was being maintained by U.S. Department of Justice, Federal Bureau of Investigation, National Instant Criminal Background Check System.

j.  As of October 25, 2010, Plaintiff RICHARD ENOS is <u>permitted</u> to acquire and possess firearms under the laws of the State of California.

k.  As of October 25, 2010, Plaintiff RICHARD ENOS is <u>prohibited</u> from acquiring and possessing firearms due to threat of criminal prosecution under federal law.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

l.    But for Defendants' wrongful interpretation of the federal laws regulating firearm possession and purchase by domestic violence misdemeanants, Plaintiff RICHARD ENOS would acquire, keep and bear arms for, among other lawful purposes, self-defense in his home.

30.    Plaintiffs BASTASINI, MERCADO, GROVES and MONTEIRO:

a.    Plead or were convicted of misdemeanors under California Penal Code § 273.5.

i.    Plaintiff BASTASINI plead no contest (and/or guilty) to a misdemeanor charge of California Penal Code § 273.5 on March 25, 1991.  He was not represented by counsel.

ii.    Plaintiff LOUIE MERCADO plead no contest (and/or guilty) to a misdemeanor charge of California Penal Code § 273.5 on December 17, 1990.  He was represented by counsel.

iii.    Plaintiff WALTER GROVES plead no contest (and/or guilty) to a misdemeanor charge of California Penal Code § 273.5 on January 12, 1990.  He was represented by counsel.

iv.    Plaintiff MANUEL MONTEIRO plead no contest (and/or guilty) to a misdemeanor charge of California Penal Code § 273.5 on May 27, 1992.

b.    In 1993 the California Legislature amended Penal Code § 12021 and added Penal Code § 273.5 to the list of misdemeanors which prohibit a person from acquiring/possessing a firearm for 10 years after the date of conviction.

c.    On September 13, 1994, Congress passed the Violence Against Women Act, and in 1996 Congress amended the act to impose a lifetime ban on the acquisition/possession of firearms by misdemeanants convicted of Domestic Violence. 18 U.S.C. §§ 921 and 922 *et seq.*

d.    Plaintiffs JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES and MANUEL MONTEIRO have not availed themselves of the relief provisions under California Penal Code § 12021(c)(3) as this would be a futile act based upon the passage of ten (10) years and upon the Federal Government's current

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder                    Page 7 of 16                    1st Amended Complaint/Decl Relief

66

1      interpretation of 18 U.S.C. §§ 921 and 922 *et seq.*

2      e.     Plaintiffs JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES and

3             MANUEL MONTEIRO have availed themselves of the provisions of California

4             Penal Code § 1203.4. Their petitions were granted.

5      f.     As of October 25, 2010, Plaintiffs JEFF BASTASINI, LOUIE MERCADO,

6             WALTER GROVES and MANUEL MONTEIRO are <u>permitted</u> to acquire and

7             possess firearms under the laws of the State of California.

8      g.     As of October 25, 2010, Plaintiffs JEFF BASTASINI, LOUIE MERCADO,

9             WALTER GROVES and MANUEL MONTEIRO are <u>prohibited</u> from acquiring

10            and possessing firearms due to a credible threat of criminal prosecution under

11            federal law.

12     h.     But for Defendants' wrongful interpretation of the federal laws regulating firearm

13            possession and purchase by domestic violence misdemeanants, Plaintiffs JEFF

14            BASTASINI, LOUIE MERCADO, WALTER GROVES and MANUEL

15            MONTEIRO would acquire, keep and bear arms for, among other lawful

16            purposes, self-defense in their homes.

17  31.   Plaintiffs EDWARD ERIKSON and VERNON NEWMAN:

18     a.     Plead or were convicted of domestic violence misdemeanors.

19            i.      Plaintiff ERIKSON's date of conviction was 1996.

20            ii.     Plaintiff NEWMANS's date of conviction was 1997.

21     b.     In 1993 the California Legislature amended Penal Code § 12021 to create a list of

22            domestic violence misdemeanors which prohibit a person from

23            acquiring/possessing a firearm for 10 years after the date of conviction.

24     c.     On September 13, 1994, Congress passed the Violence Against Women Act, and

25            in 1996 Congress amended the act to impose a lifetime ban on the

26            acquisition/possession of firearms by misdemeanants convicted of Domestic

27            Violence. 18 U.S.C. §§ 921 and 922 *et seq.*

28     d.     Plaintiffs ERIKSON and NEWMAN cannot avail themselves of the relief

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    provisions under California Penal Code § 12021(c)(3) by the terms of that statute.

2    (i.e., their convictions occurred after 1993.)

3    e.    Plaintiffs ERIKSON and NEWMAN have availed themselves of the provisions of

4    California Penal Code § 1203.4.  Their petitions were granted.

5    f.    As of October 25, 2010, Plaintiffs ERIKSON and NEWMAN are <u>permitted</u> to

6    acquire and possess firearms under the laws of the State of California.

7    g.    As of October 25, 2010, Plaintiffs ERIKSON and NEWMAN are <u>prohibited</u> from

8    acquiring and possessing firearms due to a threat of criminal prosecution under

9    federal law.

10    h.    But for Defendants' wrongful interpretation of the federal laws regulating firearm

11    possession and purchase by domestic violence misdemeanants, Plaintiffs

12    ERIKSON and NEWMAN would acquire, keep and bear arms for, among other

13    lawful purposes, self-defense in their homes.

14    32.    Plaintiff JEFF LOUGHRAN was convicted of a misdemeanor, California Penal Code §

15    242, on May 26, 1992.

16    a.    In 1993 the California Legislature amended Penal Code § 12021 to create a list of

17    misdemeanors which prohibit a person from acquiring/possessing a firearm for 10

18    years after the date of conviction.

19    b.    On September 13, 1994, Congress passed the Violence Against Women Act, and

20    in 1996 Congress amended the act to impose  a lifetime ban on the

21    acquisition/possession of firearms by misdemeanants convicted of Domestic

22    Violence. 18 U.S.C. §§ 921 and 922 *et seq.*

23    c.    On May 26, 1994, Plaintiff LOUGHRAN was granted relief under California

24    Penal Code § 1203.4.

25    d.    On November 23, 1998, Plaintiff LOUGHRAN was granted a motion to vacate

26    his 1992 judgment of conviction pursuant to a *Writ of Error Coram Nobis*.

27    e.    Plaintiff LOUGHRAN has <u>not</u> availed himself of the relief provisions under

28    California Penal Code § 12021(c)(3) as this would be a futile act based upon

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

f.    As of October 25, 2010, Plaintiff LOUGHRAN is <u>permitted</u> to acquire and possess firearms under the laws of California and North Dakota.

g.    As of October 25, 2010, Plaintiff LOUGHRAN is <u>prohibited</u> from acquiring and possessing firearms due to a threat of criminal prosecution under federal law.

h.    But for Defendants' wrongful interpretation of the federal laws regulating firearm possession and purchase by domestic violence misdemeanants, Plaintiff LOUGHRAN would acquire, keep and bear arms for, among other lawful purposes, self-defense in his home.

33.    Plaintiff WILLIAM EDWARDS:

a.    Plaintiff EDWARDS suffered a conviction for Penal Code § 415 (Disturbing the Peace) on or about July 15, 2005.

b.    Since that date, Plaintiff EDWARDS has been denied the right to own, possess or purchase firearms.

c.    Plaintiff  Plaintiff EDWARDS is not prohibited under California Law from possessing or purchasing firearms.

d.    Penal Code § 415 [Disturbing the Peace] states:

Any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than four hundred dollars ($400), or both such imprisonment and fine:

> (1)    Any person who unlawfully fights in a public place or challenges another person in a public place to fight.
> (2)    Any person who maliciously and willfully disturbs another person by loud and unreasonable noise.
> (3)    Any person who uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction.

e.    California Penal Code § 415 is not a crime of domestic violence under 18 U.S.C. § 921 and/or 922 *et seq.*

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder

Page 10 of 16

1st Amended Complaint/Decl Relief

69

1  f. California does have specific vigorously enforced Domestic Violence statutes:

2    i. Penal Code § 243(e).

3    ii. Penal Code § 273.5.

4  g. Plaintiff EDWARDS has been denied the right to purchase or possess firearms

5   solely based on the Federal Government's wrongful application and/or

6   interpretation of 18 U.S.C. §§ 921 and 922 *et seq.*

7  h. But for Defendants' wrongful interpretation of the federal laws defining domestic

8   violence misdemeanants, Plaintiff EDWARDS would acquire, keep and bear arms

9   for, among other lawful purposes, self-defense in his home.

10

11      **FIRST CLAIM - Declaratory Relief**

12 34. Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

13 35. Pursuant to 18 U.S.C. § 921(a)(33) Plaintiff RICHARD ENOS has not been convicted of

14  a crime of domestic violence under any one of three possible theories:

15  a. RICHARD ENOS was not apprized of the possibility of losing his firearm rights

16   when he plead no contest to a misdemeanor crime of Domestic Violence back in

17   1991, as there was no federal or state law prohibiting Domestic Violence

18   misdemeanants from acquiring/possessing firearms upon conviction.  Therefore

19   he could not make a knowing/intelligent waiver of his right to a trial.

20  b. RICHARD ENOS applied for and was granted a restoration of his rights under

21   California Penal Code § 12021(c)(3) by a Superior Court Judge in Santa Clara

22   County California.

23  c. And finally, the State of California restores the right to possess firearms for

24   Domestic Violence misdemeanants 10 years after conviction, by operation of law.

25 36. Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive Plaintiff

26  RICHARD ENOS of the "right to keep and bear arms" he would otherwise enjoy if the

27  Defendants correctly applied the law.

28 / / / /

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder   Page 11 of 16   1st Amended Complaint/Decl Relief

70

**SECOND CLAIM – Declaratory Relief**

2  37.  Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

3  38.  Pursuant to 18 U.S.C. § 921(a)(33) Plaintiffs JEFF BASTASINI, LOUIE MERCADO,

4  WALTER GROVES and MANUEL MONTEIRO have not been convicted of a crime of

5  domestic violence under any one of two possible theories:

6  a.  JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES and MANUEL

7  MONTEIRO were not apprized of the possibility of losing their firearm rights

8  when they plead no contest to a misdemeanor crime of Domestic Violence as

9  there was no federal or state law prohibiting Domestic Violence misdemeanants

10  from acquiring/possessing firearms upon conviction.  Therefore they could not

11  make a knowing/intelligent waiver of their right to a trial.

12  b.  And, the State of California restores the right to possess firearms for Domestic

13  Violence misdemeanants 10 years after conviction, by operation of law.

14  39.  Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive Plaintiffs JEFF

15  BASTASINI, LOUIE MERCADO, WALTER GROVES and MANUEL MONTEIRO of

16  the "right to keep and bear arms" they would otherwise enjoy if the Defendants correctly

17  applied the law.

18

19  **THIRD CLAIM – Declaratory Relief**

20  40.  Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

21  41.  Pursuant to 18 U.S.C. § 921(a)(33) Plaintiffs EDWARD ERIKSON and VERNON

22  NEWMAN have not been convicted of a crime of domestic violence because the State of

23  California restores the right to possess firearms for Domestic Violence misdemeanants 10

24  years after conviction, by operation of law.

25  42.  Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive Plaintiffs

26  EDWARD ERIKSON and VERNON NEWMAN of the "right to keep and bear arms"

27  they would otherwise enjoy if the Defendants correctly applied the law.

28  ////

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder                    Page 12 of 16                    1st Amended Complaint/Decl Relief

71

## FOURTH CLAIM – Declaratory Relief

43. Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

44. Pursuant to 18 U.S.C. § 921(a)(33) Plaintiff JEFF LOUGHRAN has not been convicted of a crime of domestic violence under any one of three possible theories:

    a.    LOUGHRAN was not apprized of the possibility of losing his firearm rights when he plead no contest to a misdemeanor crime of Domestic Violence as there was no federal or state law prohibiting Domestic Violence misdemeanants from acquiring/possessing firearms upon conviction. Therefore he could not make a knowing/intelligent waiver of his right to a trial.

    b.    LOUGHRAN applied for and was granted an order vacating his original judgment of conviction pursuant to a *writ of error coram nobis* .

    c.    And finally, the State of California restores the right to possess firearms for Domestic Violence misdemeanants 10 years after conviction, by operation of law.

45. Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive Plaintiff LOUGHRAN of the "right to keep and bear arms" he would otherwise enjoy if the Defendants correctly applied the law.


## FIFTH CLAIM - Declaratory Relief

46. Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

47. Pursuant to 18 U.S.C. § 921(a)(33) Plaintiff EDWARDS has not been convicted of a crime of domestic violence, so has to prohibit him from acquiring/possessing firearms because the crime of disturbing the peace does not contain as an element of the crime:

    a.    The use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    48.  Defendants have misinterpreted 18 U.S.C. § 921(a)(33) so as to deprive Plaintiff

2         EDWARDS of the "right to keep and bear arms" he would otherwise enjoy if the

3         Defendants correctly applied the law.

4

5                    **SIXTH CLAIM – Second Amendment**

6    49.  Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

7    50.  The Second Amendment to the United States Constitution provides in part that: *"the*

8         *right of the people to keep and bear Arms shall not be infringed."*

9    51.  On its face, 18 U.S.C. §§ 921(a)(33), 922(d)(9) and 922(g)(9) violates the Second

10        Amendment to the United States Constitution because it imposes a lifetime ban on the

11        exercise of a fundamental constitutional "right to keep and bear arms" after conviction of

12        a minor crime.

13   52.  As applied to the facts of this case, the Defendants' interpretations of 18 U.S.C. §§

14        921(a)(33), 922(d)(9) and 922(g)(9) violates the Second Amendment to the United States

15        Constitution because it imposes a lifetime ban on the exercise of a fundamental

16        constitutional "right to keep and bear arms" after conviction of a minor crime.

17

18                    **SEVENTH CLAIM – First Amendment**

19   53.  Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

20   54.  The First Amendment to the United States Constitution provides in part that: *Congress*

21        *shall make no law...abridging... the right of the people...to petition the Government for a*

22        *redress of grievances.*

23   55.  On its face, 18 U.S.C. §§ 921(a)(33), 922(d)(9) and 922(g)(9) violates the rights of the

24        Plaintiffs under the First Amendment to the United States Constitution, because it

25        imposes a lifetime ban on the exercise of a fundamental constitutional right for a minor

26        crime without providing a statutory remedy to petition their government for restoration of

27        that right.

28   56.  As applied to the facts of this case, Defendants' interpretations of 18 U.S.C. §§

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

921(a)(33), 922(d)(9) and 922(g)(9) violates the rights of the Plaintiffs under the First Amendment to the United States Constitution, because it imposes a lifetime ban on the exercise of a fundamental constitutional "right to keep and bear arms" after conviction for a minor crime without providing a statutory remedy to petition their government for restoration of that right.

### **EIGHTH CLAIM – Tenth Amendment**

57. Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

58. The Tenth Amendment to the United States Constitution provides: *"The powers not delegated to the Unites States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."*

59. On its face, 18 U.S.C. §§ 921(a)(33), 922(d)(9) and 922(g)(9) violates the Tenth Amendment to the United States Constitution because it usurps the States' powers to define and provide for the rehabilitation of minor public offenses.

60. As applied to the facts of this case, the Defendants' interpretations of 18 U.S.C. §§ 921(a)(33), 922(d)(9) and 922(g)(9) violates the Tenth Amendment to the United States Constitution because it usurps the States' powers to define and provide for the rehabilitation of minor public offenses.

61. This usurpation of power by the federal government is directly responsible for the infringement of the Plaintiffs' fundamental "right to keep and bear arms."

### **NINTH CLAIM – Fifth Amendment "Due Process"**

62. Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

63. The Fifth Amendment to the United States Constitution provides in part that: *"No person shall... be deprived of life, liberty or property, without due process of law..."*

64. Part of the protection afforded Plaintiffs under the Fifth Amendment Due Process Clause against the federal government is the guarantee of "equal protection" under the law.

65. On its face, 18 U.S.C. §§ 921(a)(33), 922(d)(9) and 922(g)(9) violates the Fifth

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Enos v. Holder

Page 15 of 16

1st Amended Complaint/Decl Relief

74

1  Amendment to the United States Constitution because it imposes a lifetime ban on the

2  exercise of a fundamental constitutional right for a minor crime without providing a

3  statutory remedy for restoration of that right, even though a provision exists in federal law

4  for the restoration of rights by felons.  See 18 U.S.C. § 925(c).

5  66.  As applied to the facts of this case, the Defendants' interpretations of 18 U.S.C. §§

6  921(a)(33), 922(d)(9) and 922(g)(9) violates the Fifth Amendment to the United States

7  Constitution because it imposes a lifetime ban on the exercise of a fundamental

8  constitutional right for a minor crime without providing a statutory remedy for restoration

9  of that right, even though a provision exists in federal law for the restoration of rights by

10  felons. See 18 U.S.C. § 925(c).

11

12  **PRAYER FOR RELIEF**

13  WHEREFORE, Plaintiffs prays that this Court will enter judgment as follows:

14  A.  Declaratory and injunctive relief that all Plaintiffs are not subject to the prohibitions set

15  forth in 18 U.S.C. §§ 922(d)(9) and 922(g)(9).

16  B.  Declaratory and injunctive relief that 18 U.S.C. §§ 922(d)(9) and 922(g)(9) are

17  unconstitutional on their face and as applied to all Plaintiffs.

18  C.  Award Plaintiffs their reasonable attorney fees and costs under 28 U.S.C. § 2412, 42

19  U.S.C. § 1988 and/or 18 U.S.C. § 925A.

20  D.  Such other and further relief as this Court deems just and proper.

21  Respectfully Submitted on January 10, 2011,

22  _____/s/_____
   Donald E.J. Kilmer, Jr., (SBN: 179986)
23  LAW OFFICES OF DONALD KILMER
   A Professional Corporation
24  1645 Willow Street, Suite 150
   San Jose, California 95125-3030
25  Telephone:     408/264-8489
   Facsimile:     408/264-8487
26  E-Mail:     Don@DKLawOffice.com

27  Attorney for Plaintiffs

28

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

---oOo---

RICHARD ENOS, et al.,

        Plaintiffs,

vs.                    No. Civ. S-10-2911

ERIC HOLDER, as United
States Attorney General,
et al.,

        Defendants.

_____/

---oOo---

REPORTER'S TRANSCRIPT

MOTION FOR SUMMARY JUDGMENT

WEDNESDAY, JANUARY 25, 2012

---oOo---

Reported by:      KELLY O'HALLORAN, CSR #6660

```
                        APPEARANCES



For the Plaintiff:


     LAW OFFICES OF DONALD KILMER
     1645 Willow Street, Suite 150
     San Jose, CA  95125
     BY:  DONALD E.J. KILMER, JR.

 For the Defendant:

     BENJAMIN B. WAGNER
     United States Attorney
     501 I Street, Suite 10-100
     Sacramento, CA  95814
     BY:  EDWARD A. OLSEN
          Assistant United States Attorney
```

SACRAMENTO, CALIFORNIA

2           WEDNESDAY, JANUARY 25, 2012, 1:30 P.M.

3                        ---oOo---

4           THE CLERK:  Civil S-10-2911; Enos, et al. versus

5    Holder, et al.

6           MR. KILMER:  Good afternoon, your Honor.  Donald

7    Kilmer for the plaintiffs.

8           THE COURT:  Good afternoon.

9           MR. OLSEN:  Good afternoon, your Honor.  Edward Olsen

10   from the U.S. Attorney's Office on behalf of the defendants.

11          THE COURT:  Welcome back.

12          MR. KILMER:  May we be seated, your Honor?

13          THE COURT:  You may both be seated.  Just keep the

14   microphones in front of you.

15          All right.  The motion to dismiss the second amended

16   complaint has been filed, opposed, and a reply brief has been

17   filed.  A motion for summary judgment was also filed by the

18   plaintiffs.  Actually, it's been fully briefed as well, but

19   the Court moved the hearing on the summary judgment motion I

20   think to March.  I want to take up the motion to dismiss

21   first.

22          MR. KILMER:  Your Honor, may I be heard on the date

23   that the Court selected?

24          THE COURT:  Yes.

25          MR. KILMER:  That is actually the very week that I'm

1    going to be arguing Nordyke before an en banc panel of the

2    Ninth Circuit.  So I was wondering if we could hear that

3    motion for summary judgment either the week after or two

4    weeks later.

5           THE COURT:  Remind me at the end of this, and we'll

6    take a look at it.

7           MR. KILMER:  I will, your Honor.  Thank you.

8           THE COURT:  Right now, it's scheduled for March 21st,

9    but we'll take that up at the end.

10          Okay.  Let me go through first some of the -- I don't

11   want to call them minor arguments but arguments raised in the

12   motion to dismiss that don't necessarily get to the merits of

13   the lawsuit.  The first being the alleged failure to name the

14   United States as a defendant as opposed to naming the

15   Attorney General and the Director of the FBI since

16   jurisdiction is based on 18 U.S.C. Section 925A.  And the

17   statute's quoted.

18          I guess the question I have, Mr. Olsen, I tend to

19   agree with you, but why did it take so long to raise this

20   argument, and why didn't you just call Mr. Kilmer up and say,

21   you know, there might be a problem with the named defendants?

22   Because obviously I would grant him leave to amend.  So is

23   there some reason, is there some tactical advantage that I'm

24   missing as to why you included this argument as opposed to

25   just running it by him?  All he's got to do is, I assume, is

1   after Mr. Holder's name add "and the United States Department

2   of Justice" and after Director Mueller's name add "and the

3   Federal Bureau of Investigation."  Right?

4        MR. OLSEN:  There was no tactical reason, your Honor.

5   I think in the first amended complaint, it wasn't clear at

6   least to the government what jurisdictional basis the

7   plaintiffs were asserting for their declaratory relief claim.

8   So I think the government's primary argument in the first

9   motion to dismiss was based on the lack of clarity as to what

10  the jurisdictional basis was.

11       I think when it was clarified in the second amended

12  complaint that, indeed, we are bringing our declaratory

13  relief claims under 18 U.S.C. Section 925A, I focused a

14  little bit more on that statute and looked at the plain

15  language and realized the statute commands that the United

16  States be the only proper defendant, not the individuals.  I

17  suppose at that point in time, I could have called

18  plaintiffs' counsel.  I wouldn't object, obviously, if the

19  Court denies the government's motion to dismiss on the more

20  substantive arguments, we wouldn't have any objection to

21  amending the complaint another time to give them an

22  opportunity to name the United States.

23       THE COURT:  Well, would you just stipulate at this

24  point --

25       MR. OLSEN:  Sure.

1          THE COURT:  -- to naming the two departments as

2     defendants, or do you really want him to --

3          MR. OLSEN:  I'd be happy to stipulate to the United

4     States being the only proper defendant in the action.

5          THE COURT:  Okay.  Mr. Kilmer, I do think that the

6     statute is clear.  It should be read as Mr. Olsen indicated.

7     I know you oppose that, but I think his reading and the plain

8     and clear reading of the statute is clear.  It's, again, not

9     a difference that goes to the merits.

10          MR. KILMER:  I'm certainly not going to jeopardize my

11     case for not naming the proper defendant, your Honor.  I'm

12     happy to stipulate to rename the defendants in this.

13          THE COURT:  All right.  So the Court accepts the

14     stipulation.

15          MR. KILMER:  Just so we're clear, though, your Honor,

16     so the stipulation will read:  Eric Holder, as United States

17     Attorney General, United States Department of Justice.

18          THE COURT:  You have to name the Department of Justice

19     and the Federal Bureau of Investigation.

20          MR. KILMER:  I will do so.

21          THE COURT:  Or, Mr. Olsen, do you think it should just

22     be the United States of America in general?  Because in all

23     the cases I've read, it's actually the department itself

24     that's named as a defendant.

25          MR. OLSEN:  Well, I'm not sure I, frankly, care that

1    much, but I do think the statute says the United States.  So

2    in my view, my reading of the statute is that it's the United

3    States should be named.

4         MR. KILMER:  I would not be opposed, your Honor, to

5    just amending the designation of Attorney General Holder by

6    adding Department of Justice, redesignating Robert Mueller as

7    Director of FBI and the Federal Bureau of Investigation.

8         The problem is if I have to add the United States as a

9    party, I'm going to be required to get an amended summons and

10   re-serve.

11        THE COURT:  Well, that's the question.

12        MR. KILMER:  And I'm happy to do that.

13        THE COURT:  That's a question to Mr. Olsen.  Are you

14   willing to waive that?

15        MR. OLSEN:  I'm happy to waive service.  I'm not sure

16   I understand that argument, but I'm happy to waive any

17   objections to service if he's just adding the United States

18   or substituting the United States for the individually named

19   defendants.

20        THE COURT:  I think it really just goes to what the

21   caption should read, that it should read versus the United

22   States of America rather than naming Eric Holder and Robert

23   Mueller.  You can't sue the individuals.  You have to sue the

24   United States under that statute.

25        MR. KILMER:  I'm interested in the relief for my

1    clients.  I don't care who ends up as a defendant in this

2    case.  I'm happy to amend it to the United States of America,

3    and I understand that there's a stipulation that a new

4    summons, an amended summons, and re-service will not be

5    necessary.

6        THE COURT:  That's what I've heard.  If you need that

7    in writing, the two of you can work it out.

8        MR. KILMER:  Thank you, your Honor.

9        THE COURT:  Okay.  Just a quick question.  Would that

10   apply, do you believe, Mr. Olsen, to all four claims or just

11   the declaratory relief claims?

12       MR. OLSEN:  That's my understanding of the declaratory

13   relief claims.  And that's the only argument that the

14   government has made in terms of naming the proper defendants.

15       THE COURT:  So the fourth claim under the Second

16   Amendment, he could name Holder and Mueller.  Is that what

17   you're saying?

18       MR. OLSEN:  We haven't objected to his naming the

19   def --  I haven't done a lot of research on that, your Honor.

20       THE COURT:  Okay.  All right.  The other issue is an

21   issue, Mr. Kilmer, that I don't think you -- I'm pretty clear

22   you didn't read the motion to dismiss carefully with respect

23   to this argument.  And that is that they say that your

24   clients don't have any standing to bring a challenge to

25   922(d)(9).  In your opposition, you talk about 922(g)(9).

1    And that's not the argument.  The argument is that because

2    (d)(9) deals with persons who sell or otherwise dispose of

3    firearms, and none of the plaintiffs, at least as I can tell,

4    is a person who sells or otherwise disposes of firearms.  And

5    your complaint does include references to 922 (d)(9), and you

6    didn't respond to that in the opposition.

7           MR. KILMER:  Your Honor, one of the reasons why we

8    dealt with the people who can transfer firearms is we need an

9    interpretation of that statute as well, because part of the

10   problem that my clients are caught in the middle is that a

11   federally licensed firearms dealer is interpreting federal

12   law based on the federal government's interpretation that I

13   can't sell a gun to you.

14          THE COURT:  I'm not arguing with that, but there's no

15   plaintiff that sells guns.

16          MR. KILMER:  No, but my plaintiffs are trying to buy

17   guns from dealers who do need that statute interpreted for

18   them.

19          THE COURT:  Why does that give your clients standing?

20   That's the issue raised by the government.

21          MR. KILMER:  Because my clients need to be able to buy

22   weapons, your Honor.

23          THE COURT:  Well, that's why (g)(9) is being

24   challenged, not (d)(9).  There's no plaintiff that can, at

25   least named in this lawsuit, that has standing to challenge

1   (d)(9), as far as I can tell.  The argument has merit.  And

2   since you didn't oppose it at all in the opposition, there

3   really is no opposition, and I don't think I have any other

4   choice but to grant that portion of the motion as well.

5        MR. KILMER:  Well, that sounds like it would be more,

6   for instance, a motion to strike some part of the claim, your

7   Honor, but it doesn't strike the claim.

8        THE COURT:  It only strikes -- I assume you just want

9   to strike references to (d)(9).  And it's referenced, in

10  particular, in the fourth claim, the Second Amendment claim.

11  I didn't see it referenced anywhere else.  I'm looking at the

12  second amended complaint.  I don't know if you did,

13  Mr. Olsen, but that's the only place that I saw it.

14       MR. OLSEN:  The government would be happy with

15  striking all references to (d)(9) to make it clear that the

16  challenge here is to 922(g)(9), not (d).

17       THE COURT:  Okay.  I'm going to grant that motion,

18  that portion of the motion.  Any references to 922(d)(9) will

19  be stricken from the second amended complaint.

20       MR. KILMER:  So we're talking about paragraph 17 of

21  the second amended complaint.

22       THE COURT:  Well, there's another paragraph too.  Hang

23  on.

24       MR. OLSEN:  It's in 47.

25       THE COURT:  It's in 47, too, yes.  It's in 17, and

1  it's primarily in -- it's actually in 46 and 47.

2          MR. KILMER:  I see.  Got it.

3          THE COURT:  Okay.

4          MR. OLSEN:  And the prayer for relief.

5          THE COURT:  And the prayer for relief.  Right.

6          Any references to (d)(9) will be stricken.

7          Okay.  In the fourth claim, again staying on that, in

8  paragraph 46, you indicate in the complaint at least that

9  this is a facial challenge, but in the opposition you seem to

10  withdraw that facial challenge.  Is that accurate?

11          MR. KILMER:  Yes, it is, your Honor.

12          THE COURT:  Okay.  So paragraph 46 will also be

13  stricken from this complaint.

14          MR. OLSEN:  Your Honor, if I could just be heard

15  briefly on that point.

16          THE COURT:  Go ahead.

17          MR. OLSEN:  It's difficult for the government to

18  understand based on the second amended complaint and the

19  opposition to the motion to dismiss exactly what the nature

20  of their Second Amendment challenge is.  The statute has not

21  been applied to the plaintiffs.  So I'm not sure how the --

22  and the government addressed this more, frankly, in the

23  motion to dismiss the first amended complaint.  But the

24  statute hasn't been applied to the plaintiffs, so I don't see

25  how they can bring an as-applied challenge.  What I can see,

1   and there are references to this in some of the cases that

2   are cited by both parties, is that their challenge to this

3   lifetime ban is really --

4   THE COURT:  Don't jump there yet.  Let me get to that

5   slowly.

6   MR. OLSEN:  Okay.

7   THE COURT:  We'll come back to that, because I think

8   that's the guts of this argument that I need to hear from

9   both of you on.  So keep that thought.  We'll definitely come

10  back to it.  Okay?

11  All right.  I want to focus on the declaratory relief

12  claims first.  And again, although I'm not here to discuss

13  the summary judgment motion, Mr. Kilmer, you did sort of take

14  an interesting approach in the summary judgment motion that

15  you really want me to focus primarily on the declaratory

16  relief as opposed to the Second Amendment.  And I want to

17  start with the declaratory relief claims themselves.

18  Also for purposes of this motion, as Mr. Kilmer, you

19  raised, I am assuming that all the allegations that are set

20  forth in the second amended complaint are true.  Presumptions

21  are drawn in favor of the plaintiffs.  But, quite frankly, I

22  don't see any factual disputes -- we can talk about that, but

23  I don't really see a factual dispute in this lawsuit.  It's

24  purely a question of law.

25  MR. KILMER:  We would agree, your Honor.

1       THE COURT:  Okay.  You ask the Court in the first

2   claim, second claim, and third claim, dealing with different

3   plaintiffs but basically the same, to enter a declaratory

4   judgment which, in effect, would state that the plaintiffs

5   have not been convicted of a crime of domestic violence

6   pursuant to 18 U.S.C. Section 921(a)(33).  And (a)(33) is the

7   Section, 921(a)(33), that defines the terms of someone who's

8   been convicted of a misdemeanor crime of domestic violence,

9   and then it contains the exceptions.

10      There's no argument that all the plaintiffs were

11  convicted of crimes of misdemeanor crimes of domestic

12  violence.  Again, that's undisputed.

13      And then the approach and the theory in this lawsuit

14  is that specifically the exception that should be applied --

15  well, the first attack is that you want me to find that at

16  the time that these plaintiffs entered their pleas, and it

17  may not apply to at least this portion, it only seems to be

18  alleged as to Enos, Bastasini, Mercado, Groves, and Monteiro.

19  Only those plaintiffs.  That when they entered their nolo

20  plea, no contest plea to the misdemeanor, that there was no

21  federal or state law prohibiting domestic violence

22  misdemeanants from acquiring/possessing firearms upon

23  conviction.  And then you jump right to the legal conclusion

24  you want me to make, which is, therefore, he could not make a

25  knowing or intelligent waiver of his right to a trial which

1    would bring him within one of those exceptions under (a)(33),

2    or them under (a)(33).

3         The government's response to that is as follows.

4    There's too many briefs up here.  There it is.  I'm sorry.

5    It's in the reply brief.  And it's under 18 U.S.C. -- the

6    argument that plaintiffs raise is that under 18 U.S.C.

7    Section 921(a)(33)(B)(i)(II)(bb), that because they did not

8    make knowing and intelligent waivers of the right to a jury

9    trial, that they can't be found to have been convicted of a

10   misdemeanor crime of domestic violence.

11        Plaintiffs argue that their waivers of the right to a

12   jury trial were not knowing and intelligent because they were

13   not apprised of the possibility of losing their right to

14   possess a firearm if they were convicted.

15        The first argument the government raises is that

16   plaintiffs have cited no authority for the proposition that

17   in a civil proceeding brought under 18 U.S.C. Section 925A,

18   that in a civil lawsuit such as this that the Court does have

19   jurisdiction to determine that an individual's waiver of his

20   or her right to a jury trial that was made in a state

21   criminal proceeding was not knowing and intelligent.  So

22   there's a jurisdictional argument.

23        And then, second, the government argues that, in any

24   event, the plaintiffs' argument lacks merit.  First, when a

25   person enters a guilty or no contest plea, he must be advised

1    of all direct consequences of the conviction.  This

2    requirement relates to the primary and direct consequences

3    involved in the criminal case itself and not to secondary,

4    indirect, or collateral consequences.  And again, there's

5    cases cited throughout to support these propositions.

6         Direct consequences of a guilty plea include the

7    statutory range of punishment for the conviction, probation

8    ineligibility, and a required term of parole.  Citing People

9    vs. Crosby, the government argues a collateral consequence is

10   one which does not inexorably follow from a conviction of the

11   offense involved in the plea.  Citing People vs. Gurule, the

12   government argues the possible future use of a current

13   conviction is not a direct consequence of the conviction.  If

14   a consequence is only collateral, no advisement is required.

15        These plaintiffs that raise this argument in the

16   complaint acknowledge that there is, and again, there's no

17   dispute that at the time of their pleas, individuals with

18   convictions for misdemeanor crimes of domestic violence were

19   not prohibited from possessing firearms since 922(g)(9), 18

20   U.S.C. 922(g)(9), wasn't enacted until 1996.  All these pleas

21   were before that date.

22        And the argument then is that plaintiffs cannot

23   reasonably argue that they were not apprised of a direct

24   consequence of their conviction since the law obviously

25   doesn't require defendants to be apprised of future

1    unanticipated changes in the law.

2         And the only case, Mr. Kilmer, that you cite in

3    support of the argument is Padilla vs. Kentucky, and that is

4    distinguished on page 7 of the reply brief.

5         I find this argument to have a lot of merit.  I don't

6    know, particularly thinking back to my own experience, both

7    in state and federal court, I have no idea how I could

8    apprise someone who I'm taking a plea from of some possible

9    future consequence, and because I didn't apprise them of a

10   future consequence, that didn't mean that there wasn't a

11   conviction or a valid conviction or a valid plea.  And

12   Padilla doesn't stand for that.

13        So is there some other case that you think warrants

14   that conclusion?  Because, honestly, I think it's a creative

15   argument, but as a matter of law, I don't think there's any

16   support, particularly given all the cases cited by the

17   government that just say there's no merit to that argument.

18        MR. KILMER:  My response, your Honor, is that the

19   reason why there's no case law dealing with collateral

20   consequences that were ex-post facto collateral consequences

21   imposed on people after they pled their cases is because the

22   status of the Second Amendment as a fundamental right was in

23   some form of limbo in 1996.  In 1996, nobody knew,

24   notwithstanding the fact that the Second Amendment was over

25   200 years old, but nobody knew that in 2008, the U.S. Supreme

1    Court was going to say no, it's a fundamental civil right.

2    If it was, then it's quite possible that Lautenberg may have

3    addressed that, but it didn't.

4         The point is that it's a fundamental civil right.

5    This collateral consequence is at least as fundamental as

6    whether or not you're going to be deported.  And that's why

7    we cited the Padilla case.

8         I have to concede the point that there's no case law

9    interpreting this.  I think the Court is left without any

10   guidance from any superior courts on this, except for the

11   fact that Heller and McDonald have given us a new paradigm

12   for taking a look at these restrictions.

13        In 1993, California led the nation in proposing that

14   misdemeanor crimes of domestic violence would result in the

15   collateral consequence of not having firearms for ten years.

16   When Lautenberg came along, the Lautenberg amendment was

17   attempting to address the fact that 49 other jurisdictions

18   either didn't address the issue or they simply prosecuted

19   domestic violence as a common law crime or they had no

20   provisions at all for restricting these misdemeanants of

21   access to firearms.

22        In fact, in some of the arguments, Senator Lautenberg

23   himself talked about repeat offenders and that the reason why

24   he wanted to protect women with the Lautenberg amendment was

25   to prevent the repeat offender from going back after a

1   conviction, getting a gun, and harming somebody.  Well, the

2   argument that they couldn't have been apprised of this

3   because it didn't exist, I'll admit it was an artful drafting

4   and creative on our part, but the fact of the matter is that

5   nobody knew what the status of the Second Amendment was going

6   to be until 2008.

7        And what's interesting is the State of California even

8   acknowledged this ex-post facto consequence in Penal Code

9   Section 12021(c)(3) where it said that if you were convicted

10  of a misdemeanor crime of domestic violence prior to that

11  statute being added to 12021, you could petition for a

12  one-time relief.  So there was an acknowledgment in the law

13  that people should not be subject to the loss of some right

14  or privilege for prior convictions or prior pleas based upon

15  a new public policy by the government.

16       THE COURT:  I also, I have to say, I find a lot of

17  merit in what I labeled the jurisdictional argument.  I think

18  this type of argument maybe should have or maybe still can be

19  made to the superior court in which the nolo pleas were

20  entered on a motion to set aside the plea.  I'd like to know

21  if the state court agrees with your argument or not.  It's an

22  interesting argument.  But I don't think a federal court has

23  any business, especially in a state court conviction, issuing

24  some type of decision that might affect a state criminal

25  case.

1      I'm reluctant to go there.  It's not the basis for my

2  finding merit to the government's argument, but it rings, I

3  think, true that maybe the starting point with this type of

4  argument should have been or should be the superior court in

5  which the conviction was or the plea was entered.

6      It might be a basis for setting aside that plea, but,

7  again, given all the other law that was cited by the

8  government, I think you'd have a difficult time even in

9  superior court convincing a superior court judge that, you

10  know, that because of the change in the law, that they should

11  be allowed to withdraw their plea.

12      MR. KILMER:  But this is the dilemma my clients keep

13  facing, your Honor.  They're being told in federal court that

14  you have to go to state court for a state remedy.  And then

15  when we go to state court -- we haven't tried it yet, but

16  perhaps we should in some future case.  But we go to state

17  court, and the state court judge is just going to say you're

18  not prohibited under state law.  I'm not going to interpret

19  federal law for you.

20      THE COURT:  This doesn't require interpretation of

21  federal law.

22      MR. KILMER:  No, your Honor.  That's the exact point,

23  is that these plaintiffs have all passed the ten-year

24  prohibition under 12021.  They're not prohibited under state

25  law from having a gun.

1     THE COURT:  I understand all that.  I'm just focused

2  on your pleading where you jump from the fact that they

3  weren't advised means that they didn't make a knowing and

4  intelligent waiver of their right to a jury trial.  And I

5  don't find any merit in those allegations, that specific

6  allegation or that argument.  So I would grant, clearly grant

7  the motion to dismiss with respect to that part of the first,

8  second, and third claims.  Again, it only applies to Enos and

9  -- it's only in the first and second claim.  It doesn't apply

10  to Erickson or Newman.

11     And then the second and third arguments raised by

12  Mr. Enos is the restoration of rights argument that we

13  discussed at the last motion to dismiss.  I find it

14  interesting that in the claims, for example, the first claim

15  for declaratory relief, and I don't know if both of you have

16  the complaint in front of you, but paragraph 36(c), for

17  example, you ask for the Court to declare or enter a

18  declaratory judgment that the State of California restores

19  the right to possess firearms for domestic violence

20  misdemeanants ten years after conviction, by operation of

21  law.

22     And I would think, Mr. Olsen, that you actually

23  wouldn't object to that.  That's an accurate statement of the

24  law.

25     MR. OLSEN:  Correct.

1          THE COURT:  But I guess the question I had,

2    Mr. Kilmer, is what does that buy you?  Aren't you really

3    asking for -- I sort of wrote a note to myself saying

4    shouldn't that really allege that not only does the State of

5    California restore the right to possess, but that

6    satisfies -- what you're really asking me to find or make a

7    declaration that that actually satisfies the restoration of

8    civil rights exception that's found in 921(a)(33).  That's

9    your argument; right?

10          MR. KILMER:  Correct.

11          THE COURT:  Okay.  Because no one disputes that if

12    there was no federal government, your clients would be able

13    to purchase firearms.  If only the states existed and the

14    Lautenberg amendment and Act didn't exist, they'd be free to

15    go about their business, because under California law, ten

16    years have passed.

17          MR. KILMER:  And, in fact, your Honor, some of these

18    plaintiffs actually did, with the state's permission and

19    background check, purchase firearms after the ten years had

20    passed.  And then going to make subsequent purchases, the

21    federal government either changed its interpretation, which

22    we don't know because we haven't done discovery yet.  Either

23    they changed their interpretation or they started being

24    stricter in looking at these cases and saying no, your rights

25    weren't restored after the ten years.  So we actually have

1    cases and we've actually alleged in our complaint that some

2    of these plaintiffs were actually cleared and did, in fact,

3    purchase firearms.

4         One of the things I had to do when I agreed to

5    represent these men is, you know, the federal government says

6    that you're a criminal, you need to dispose of your firearms,

7    and they all did.

8         THE COURT:  It sounds like the marijuana cases,

9    doesn't it?

10        MR. KILMER:  No comment.

11        THE COURT:  Okay.  Well, let's get back to this.  And

12   we've been down this road before in terms of that portion of

13   the statute.  Is it a civil right being restored?  Is it

14   civil rights that have been restored?  You know, does that

15   portion of this statute apply in light of Heller and

16   McDonald, the changes that people have argued that have been

17   brought about by those cases?

18        And I went back and reread the transcript of our last

19   hearing, and I'm not sure, and I'm not certain, and I reread

20   the order.  But as I sit here right now, I'm not sure if I

21   punted that question or not.  But it's obviously one that now

22   has been fully briefed for a second time and deserves a

23   response.  And I don't know.

24        Mr. Olsen, how do you think I handled that the first

25   time around?

1          MR. OLSEN:  The way I interpret the order, your Honor,

2     is that you gave plaintiffs one more opportunity to make that

3     argument in light of discussion that came up primarily at the

4     oral argument about Heller and that, well, maybe the cases

5     cited by the government need to be reexamined because

6     Heller's now created this individual right to bear arms, so

7     I'll give the plaintiff an opportunity to clarify his claim

8     in a second amended complaint.  That's the way I read the

9     order.

10          The government's response to that is plaintiffs have

11     not stated a claim, even in light of Heller in their second

12     amended complaint.  And I can go through the reasons why.

13     That's the way I interpret the order.  I do think it's a

14     legal question.

15          THE COURT:  And it's somewhat of a, Mr. Kilmer, I

16     think we discussed at the last hearing, an issue of first

17     impression with respect to this specific statute and this

18     specific state that you now want this Court to interpret

19     those words "civil rights restored" to include the rights

20     that were restored here.  Again, there's no question that

21     their right to keep and bear arms has been restored at least

22     by the State of California.

23          And so the question I have, I always raise as a judge,

24     is isn't that a question that is more properly decided by the

25     Legislature?  That shouldn't Congress take that up rather

1  than have a judge, in effect, rewrite this statute?  Prior to

2  Heller and McDonald, it's always been interpreted, the

3  language "civil rights restored," to include only the right

4  to serve on a jury, the right to vote, and the right to run

5  for political office.  So, in effect, you want me to -- I

6  don't have to necessarily rewrite the statute, but I just

7  have to interpret it in a way that's never been interpreted

8  in light of Heller and McDonald.

9           Is that sort of a fair summary of your argument?

10          MR. KILMER:  In part, your Honor.  There's no question

11  that Heller and McDonald were a game changer, because now we

12  have a fundamental right that we're dealing with, and we have

13  to decide whether or not it's a civil right for purposes of

14  restoring the statute.

15          In doing my research on this issue, I took a look at

16  pretty close to all 50 states' laws dealing with collateral

17  consequences for misdemeanor crimes of domestic violence.

18  And at some point in time, I just stopped looking.  I found

19  one jurisdiction, New Jersey, which still has a sort of

20  hybrid common-law definition of domestic violence/battery.

21  And because you can do a two-year stretch, it also fits the

22  federal definition of a felony for not having a gun.

23          So I couldn't find any jurisdiction that deprived

24  anybody of the right to sit on a jury or the right to hold

25  public office or the right to vote for a misdemeanor

1    conviction, which means that the Lautenberg amendment sought

2    to impose some sort of requirement or some sort of gateway

3    before you could have your rights restored that doesn't

4    exist.

5         And I would just like to see something from the

6    government saying oh, yeah, no, we had this real big problem

7    with people being convicted of misdemeanor crimes of domestic

8    violence, they lost their right to vote, they lost their

9    right to sit on a jury.  What we mean when we say

10   "restoration of rights" is that those misdemeanants also have

11   their right to vote and sit on a jury restored.  That's a

12   nonsensical reading of the statute.

13        What Heller and McDonald does for these plaintiffs is

14   it says maybe the list of Civil Rights Act, jury, holding

15   public office, or the right to vote is incomplete, and we

16   need to add the right that's, by the way, specifically

17   addressed by Lautenberg, the right to keep and bear arms.

18        THE COURT:  Mr. Olsen, you still rely on Brailey.

19        MR. OLSEN:  Right.

20        THE COURT:  You contend that it's inconsequential that

21   it was decided before Heller because, one, Heller recognized

22   an individual's right to bear arms, but this right is not

23   among the cluster of "citizen" rights that states extend to

24   individuals by virtue of citizenship within its borders; the

25   right to vote, hold public office, and sit on a jury.  And

1    you cite a Seventh Circuit case which was post-Heller which

2    discusses civil rights under 921(a)(33)(B), United States

3    vs. Skoien, S-K-O-I-E-N, that that section,

4    921(a)(33)(B)(ii), refers to civil rights in the plural, and

5    restoration of the right to bear arms is only a singular

6    right.  And then also your argument is that plaintiffs have

7    failed to explain how Congress in 1996 could have intended

8    that "civil rights restored" under (a)(33)(B)(ii) includes

9    the right to bear arms when this right was not recognized

10   until Heller in 2008.

11        Is there anything I missed?

12        MR. OLSEN:  No.  And I would emphasize the latter

13   point, because the question we're looking at is the

14   congressional intent.  And Congress enacted the Lautenberg

15   amendment in 1996.  So in defining civil rights, the

16   individual right to bear arms wasn't recognized by the

17   Supreme Court until three years ago.  So obviously as a

18   matter of common sense, the Legislature couldn't have

19   intended civil rights to mean a right that wasn't in

20   existence.  In addition to the fact that civil rights, as

21   other courts have interpreted it, means rights extended by

22   states to citizens by virtue of their citizenship in the

23   states.  And the fact that it's in the plural.  Even if we do

24   accept for purposes of argument that the right to bear arms

25   is a civil right contemplated by the Legislature, the

1    Legislature used civil rights in the plural, and I don't

2    think plaintiffs dispute that none of these other rights have

3    been taken away and restored.  So I think --

4        THE COURT:  So what happens if the plaintiffs went to

5    their local congressman and said Heller has changed

6    everything, and there's a problem with this Lautenberg

7    amendment?  And you think the only way that they can bring

8    about the change that they seek in this lawsuit is through

9    legislative action?

10       MR. OLSEN:  I think that's right, your Honor.  Nothing

11   prevents the plaintiffs from petitioning the government in a

12   way similar to what people normally do when they're not happy

13   with the way a statute's written.  They can ask their

14   congressman to bring a bill before Congress to change the

15   language and to point out, as the plaintiffs are arguing,

16   that there aren't many states, if any, that actually do

17   deprive a defendant of the three citizen rights that we've

18   been talking about when they've been convicted of misdemeanor

19   crimes of domestic violence.  Those are perfectly appropriate

20   complaints to bring to Congress.  But what we're looking at

21   now --

22       THE COURT:  Well, why can't he bring that complaint to

23   a court as well?  It would be a lot faster than going to

24   Congress.

25       MR. OLSEN:  It may be faster than going to Congress.

1     But what we're looking at here, it's a matter of statutory

2     interpretation, and the Court's duty, as the Court well

3     understands, is to try and discern the intent of Congress in

4     passing the legislation and not rewriting or changing it.

5                 THE COURT:  Mr. Kilmer, do you want to respond to

6     that?

7                 MR. KILMER:  Well, your Honor, I would contend that

8     the Court's duty isn't just statutory interpretation, but the

9     Court has, as a coequal branch of government with the

10    Legislature, a duty to interpret the Constitution.  And when

11    the Supreme Court has spoken in a case about what are the

12    parameters of a right contained in an enumerated part of our

13    Bill of Rights, I think the Court has a duty to interpret

14    statutes given that new information from the U.S. Supreme

15    Court.

16                I would like to address this issue of whether the

17    rights protected by the Second Amendment are plural or

18    singular.  That issue was actually specifically addressed in

19    Heller in the majority opinion that discussed

20    Justice Stevens' contention that it's a unitary right, and

21    therefore keep and bear had some sort of military connotation

22    because you had to understand "keep" in relationship to

23    "bear."  And the majority opinion was very specific, and it

24    says no, these are different concepts, these are different

25    rights, and it is not a unitary concept.  I'm happy to

1    provide the Court with a supplemental citation to the exact

2    language in the opinion.

3         But there's all kinds of bundle of rights that go with

4    the possession of personal property.  We don't have to go to

5    the Second Amendment for this.  But when you have a piece of

6    personal property, if it's a firearm or an automobile,

7    there's a right of alienation, the right to possess, the

8    right to transfer, the right to dispose, the right to modify,

9    the right to inherit, the right to bequeath.  So all of these

10   rights also attach to the personal property that's protected

11   by the Second Amendment; the right to keep and bear arms.  So

12   there is multiple rights that my clients are being denied

13   because of this interpretation of Lautenberg.

14        THE COURT:  That was in your summary judgment motion.

15   I did, just so both sides are aware, I did at least want to

16   review, and I took a look at the summary judgment motions,

17   and there is in your summary judgment motion an entire

18   argument about that which has been responded to by the

19   government.

20        And, Mr. Olsen, do you want to respond to why you

21   don't believe it's rights, plural, as opposed to a civil

22   right?

23        MR. OLSEN:  Well, throughout Heller, the right is

24   talked about as a right, a singular right to keep and bear

25   arms.  The plaintiffs haven't defined what they mean by

1    bundle of rights.  I mean plaintiffs' counsel was just

2    talking about the right to property, but that's not what

3    we're talking about.  We're talking about a right to keep and

4    bear arms, which the court consistently in Heller refers to

5    as a right.  So I'd be interested to know what the bundle of

6    rights plaintiffs are talking about when we're talking about

7    not the right to property generally but the right to keep and

8    bear arms.

9         But even assuming the Court accepts that

10    interpretation that the right to keep and bear arms is

11    actually rights to keep and bear arms, that still doesn't

12    answer the government's first point, which is that the civil

13    rights that the Legislature was talking about refer to rights

14    extended by states by virtue of your citizenship; the right

15    to vote, the right to sit on a jury, and the right to hold

16    public office.

17         And that other point that I just mentioned, that if

18    we're trying to figure out what Congress meant in defining

19    civil rights in 1996, whether you call it a right to keep and

20    bear arms or rights to keep and bear arms, that right or

21    rights wasn't recognized until 2008.  So Congress didn't have

22    a crystal ball and in defining civil rights thought well,

23    gee, maybe in 12 years or something, maybe the Supreme Court

24    will recognize the right or rights to bear arms, so we'll

25    include that in our definition of civil rights.

1    THE COURT:  Just as an aside, Mr. Kilmer, because I

2  know you're intimately involved in court cases involving the

3  Second Amendment, but is there anything going on in the

4  Legislative side?  I mean Heller is now almost four years

5  old.  Has anyone asked Congress to look at this issue and

6  pursue an amendment to Lautenberg or is it just not on the

7  radar?

8    MR. KILMER:  Quite honestly, your Honor, because I'm

9  so busy with litigation, I tend to ignore the legislative

10  side of things because I'm one person and unable to cover all

11  bases.  I'm not personally aware that there's any legislation

12  pending to modify Lautenberg.

13    And as the Court is probably aware, it's a difficult

14  subject to talk about.  People don't want to necessarily

15  recognize, you know, to use the vernacular, that wife beaters

16  should have their rights restored.

17    But the reason that we're here is that these

18  particular plaintiffs have demonstrated under the state

19  regime that they can both be rehabilitated and remain

20  law-abiding for more than ten years.  And I think that the

21  gist of our argument and why the Court does not have to

22  reinterpret Lautenberg, you just simply have to apply the

23  reasoning in Heller and McDonald to interpret this.  And it

24  is a case of first impression.  In fact, it's quite possible

25  that because California led the nation in restricting firearm

1    rights for misdemeanor crime and domestic violence, this may

2    be the only state in which this can happen.  But it's just,

3    as the Court has noted, it's beyond dispute that these

4    gentlemen lost their right to keep and bear arms under state

5    law.  Whether they're plural or singular, I think that's a

6    red herring, and I don't think it means anything.

7          One of the things that the Legislature had -- learned

8    counsel pointed out they didn't have a crystal ball, but one

9    thing they did have is they had a dictionary and they also

10   had the prior cases.  If they wanted to substitute the words

11   "civil rights" for anybody who loses the right to sit on a

12   jury, the right to hold public office, or the right to vote

13   as a consequence of their misdemeanor conviction, they have

14   to have those rights restored in order to have their firearm

15   rights restored, they could have just as easily said that.

16   They said "civil rights."  And when the U.S. Supreme Court

17   spoke in 2008, it affirmed or at least re-recognized the

18   Second Amendment as a fundamental individual right protected

19   by the Second Amendment.

20         THE COURT:  Okay.  I want to get to the biggest issue

21   that's concerning me.  And it comes back, Mr. Olsen, to sort

22   of the point you raised at the beginning about a

23   constitutional challenge to this statute.  You know, what

24   does it mean as applied to the facts of this case.

25         I have a case where there's no dispute.  Every

1  plaintiff has been convicted, ten years have passed, so

2  they've had their rights restored, the right to keep and bear

3  arms, at least under state law.  They even petitioned under

4  1203.4 and had hearings, and a state court judge granted

5  those petitions.  And I understand that Jennings -- we talked

6  about this last time, it's U.S. vs. Jennings, at least the

7  argument is it precludes Mr. Kilmer's clients from arguing

8  that their conviction has been expunged or set aside.  It's

9  an interesting opinion because, Mr. Kilmer, when I started

10 thinking about this case again last night, I initially

11 thought well, why didn't you just argue that, that 1203.4 is

12 the functional equivalent of set aside or expunged.  And

13 obviously Jennings sort of forecloses that argument.

14      So assuming that that's not the path you're proceeding

15 down, that you're not asking me to make that finding, here's

16 the problem I'm having, Mr. Olsen.  I've got plaintiffs who

17 in every which way have rehabilitated themselves, have done

18 everything the state law has asked them to do, and they have

19 absolutely no further process by which they can, at least as

20 far as the federal government is concerned, for the rest of

21 their life keep or bear arms.  There's nothing left under

22 state law.  They can't be pardoned.  I looked at that.  They

23 can't under that Ninth Circuit case have a finding made that

24 their convictions have been expunged or set aside.  If I

25 accept your civil rights argument, they haven't had their

1   civil rights restored because they were never taken away in

2   the first place.  So there's no exception.  And so it's a

3   lifetime ban.

4        And one of the cases Mr. Kilmer submitted to me,

5   although it involved an individual with mental illness,

6   Staten I think was the case, had some really interesting

7   language to me.  And this is what's bothering me.  The

8   language was:  "Although the right established in Heller is a

9   qualified right, the right to possess arms is no longer

10  something that can be withdrawn by the government on a

11  permanent and irrevocable basis without due process."

12       And so I'm wondering now, as we sit here today, what

13  due process do these seven plaintiffs have?  And so there's a

14  lot of discussion, and I appreciate the fact you address that

15  directly, the lifetime ban argument.  You do it both in the

16  summary judgment motion and in the motion to dismiss.  And

17  you cite primarily a Seventh Circuit case, the Skoien case.

18  And you also quote a case, United States vs. Smith.

19       And here's what I found interesting about the language

20  in those cases.  First, in the Seventh Circuit case, it's

21  really interesting, they just flat out make a mistake.

22  Either someone didn't understand California law, or maybe

23  they did, because they cite to 1203.4a, which these

24  plaintiffs, by the way, couldn't have applied for relief

25  under because I think they all got probation.

1          MR. KILMER:  That's correct, your Honor.

2          THE COURT:  So again, that was foreclosed.  If someone

3     would have argued well, heck, they've had, you know, years

4     and years to apply under 1203.4a, the answer is no, they

5     didn't because they didn't qualify under 1203.4a.

6          The only relief that they could have sought is the one

7     they did, which is under 1203.4.  But now the Ninth Circuit

8     tells me well, that isn't the equivalent of a set aside or an

9     expungement.  And so the language in these cases is as

10    follows:  "Although the statute provides that expungement,

11    pardon, or restoration of civil rights means that a

12    conviction no longer disqualifies a person from possessing

13    firearms, Skoien maintains that, as a practical matter, these

14    routes to restoration are unavailable to domestic-battery

15    misdemeanants in Wisconsin."

16         Now, the plaintiffs in my case -- I'll stop for a

17    second there.  In this case before the Court, it's not a

18    practical matter.  It's a reality.  They have absolutely no

19    way to restore their civil rights.  "As the Supreme Court

20    observed in Logan vs. United States, although Wisconsin does

21    not deprive misdemeanants of the civil rights to vote, serve

22    on a jury, or hold public office, so these rights cannot be

23    restored by the passage of time, as felons' rights often are,

24    the state does give misdemeanants an opportunity to seek

25    pardon or expungement.  Some of the largest states make

1    expungement available as of right to misdemeanants who have a

2    clean record for a specified time.  California, for example,

3    has such a program," citing California Penal Code

4    Section 1203.4a.  That, by the way, is a misstatement of

5    California law, but it's a Seventh Circuit case so I'll

6    excuse that.  "See also Robert A. Mikos, Enforcing State Law

7    in Congress's Shadow, a Cornell Law Review article, finding

8    that expungement increased following the enactment of

9    922(g)(9).  This means that Section 922(g)(9) in its normal

10   application does not create a perpetual and unjustified

11   disqualification for a person who no longer is apt to attack

12   other members of the household."

13       And then the quote you gave me from Smith is as

14   follows:  "It is clear from the federal law that the majority

15   of domestic violence offenders will not regain their firearms

16   possession right.  However, there are procedures for the

17   restoration of the right.  Namely, 18 U.S.C. Section

18   921(a)(33)(B)(ii) excepts from the firearms ban individuals

19   whose domestic violence convictions have been expunged, set

20   aside, pardoned, or whose civil rights have been otherwise

21   restored.  There is, therefore, a mechanism whereby domestic

22   violence misdemeanants can regain their right to lawfully

23   keep and bear arms.  It is up to state legislatures to

24   constrict or expand the ease with which convicted

25   misdemeanants may apply for and receive relief under these

1    measures."

2         And I wrote next to that quote:  What if there is no

3    mechanism as there is in this case?  What if I have

4    plaintiffs who have absolutely no mechanism whereby they can

5    regain their right to lawfully keep and bear arms under any

6    state statute?  I have plaintiffs who can't get their -- at

7    least can't get a finding that their conviction has been

8    expunged, can't get a finding that it's been set aside, they

9    can't get a pardon.  1203.4a now is the same as 1203.4.  That

10   doesn't give them the relief.

11        So on the one hand, the government says a lifetime ban

12   may be the result of this statute, and we recognize that.

13   But there's a safety valve in the statute.  And that is

14   there's at least some due process that can be found in each

15   state.  Well, what if I have a state -- I think that's what

16   makes this case somewhat unique.  What do I do if I have a

17   state like California that doesn't have anything available to

18   these plaintiffs that would satisfy that statute?  Why should

19   I still apply the statute against these specific plaintiffs?

20   That's the hardest issue I'm having to deal with, I think, in

21   this case.

22        MR. OLSEN:  I will answer that question, but let me

23   just focus my argument first on some minor points.  I'm

24   reading the second amended complaint again as you're talking,

25   and I don't actually see a reference in there as to whether

1     or not they were granted probation or not.  And plaintiffs

2     don't explain, and I think the opportunity was there in

3     response to the government's motion to dismiss, why they

4     couldn't apply for relief under 1203.4a.

5           THE COURT:  I sort of slid over into the summary

6     judgment motion.  Again, keep in mind this is a motion to

7     dismiss so I have to take facts as true.  And I think,

8     ultimately, I don't see anything in the declarations and in

9     the records that I looked at quickly that any of these guys

10    got anything other than probation.  So assume that's true,

11    that that argument they have could have applied under --

12    because I thought about that, but I think they clearly were

13    foreclosed from applying under 1203.4a.  And now they clearly

14    are because they changed the law again, recognizing it made

15    no sense at all that someone who ends up going to jail for a

16    misdemeanor can apply under 1203.4a, but if you get

17    probation, you can't apply.  Finally someone in the

18    California Legislature figured that out, and now the statutes

19    are the same.  So assume that argument, you know, you can't

20    go down that path.

21          MR. OLSEN:  Just briefly on that point though.  My

22    understanding of what the California Legislature did in

23    amending 1203.4a was to say oh, well, just like 1203.4, this

24    doesn't mean that you can possess a firearm within ten years

25    of your conviction without running afoul of --

1      THE COURT:  What they did is instead of distinguishing

2   between someone who got jail time and someone who got put on

3   probation, it's now the same.

4      MR. OLSEN:  But what they didn't change is the

5   requirement under 1203.4a that you have to have lived an

6   honest and upright life and conform to and obey the laws of

7   the land.  That language I think is different than 1203.4.

8   And I don't think the California Legislature amended that

9   portion of it.  So there is -- I don't pretend to know why

10  the California Legislature drew that distinction between

11  1203.4 and 1203.4a, but there do seem to be some additional

12  requirements that someone must satisfy.  And also there's

13  that language in 1203.4 which says just because you obtain

14  relief under this provision doesn't mean that you still have

15  to answer questions honestly on applications that ask you if

16  you've been convicted of crimes.  You know, this conviction

17  can still be used --

18      THE COURT:  I understand.

19      MR. OLSEN:  So there's some reason to believe that

20  that doesn't constitute an expungement, whereas 1203.4a would

21  constitute an expungement because that language about not

22  being able to use a conviction for future purposes is not in

23  1203.4a.

24      THE COURT:  Let me put it differently because I like

25  to sort of get away from legalese.

1          MR. OLSEN:  Right.

2          THE COURT:  So I'm Richard Enos, and I'm sitting

3    across the table from you, and I, in effect, say what else

4    can I do, Mr. Olsen?  I've done everything I can under state

5    law, and you keep telling me that under federal law, I'm not

6    rehabilitated enough.  I haven't had any civil right

7    restored.  I don't have anything left I can do.  And how is

8    that a fair application, a constitutional application of this

9    law to me?  That's the question from a practical point of

10   view.

11         MR. OLSEN:  Right.

12         THE COURT:  What's the answer?

13         MR. OLSEN:  Well, assuming there is no safety valve

14   practically for any of these plaintiffs --

15         THE COURT:  There's no due process.  Let's use that

16   word.

17         MR. OLSEN:  Well, let me say this.  The case that

18   plaintiffs cited for this due process, that case is easily

19   distinguished because here the due process was the criminal

20   proceeding that occurred that led to the conviction.  In the

21   case that plaintiffs cited, this was a mental health

22   commitment that, you know, whether it was ex parte or there

23   weren't the procedures that we normally understand as due

24   process.  In order to deprive somebody of the right to

25   possess a firearm for life, the court wanted to make sure

1    that really this person has been determined to be mentally

2    ill pursuant to some process where they get due process.

3           THE COURT:  So now someone goes into the superior

4    court tomorrow and enters a misdemeanor plea to -- nolo plea

5    to a 273.5.  Your view is that superior court judge

6    absolutely has to inform that person that if you enter a nolo

7    plea, there is a lifetime ban on your right to possess or

8    bear arms.  Would you agree with that statement?

9           MR. OLSEN:  No.

10          THE COURT:  Why not?

11          MR. OLSEN:  Well, I think the distinction I was trying

12   -- first of all, I don't think --

13          THE COURT:  Because I don't see any process by which

14   someone who enters a nolo plea to a misdemeanor crime of

15   273.5, domestic violence, can ever get their right to bear

16   arms back.

17          MR. OLSEN:  Let me just focus on the primary point

18   you're making and then later, if you still want to hear from

19   me, I can talk about the due process portion.  But assuming

20   there's no safety valve for these plaintiffs, the Ninth

21   Circuit has already said in the context of 922(g)(1), which

22   is the felon in possession statute, the analogous statute

23   to --

24          THE COURT:  It's not analogous.  I know you want me to

25   think (g)(1) is similar to (g)(9), and it's not.

1        MR. OLSEN:  And I can explain why the government

2   believes that and why a lot of courts across the country say

3   there's even a stronger basis in a 922(g)(9) case.

4        THE COURT:  Go ahead.

5        MR. OLSEN:  The Ninth Circuit has already held

6   bluntly, in a cursory fashion, that felons are not protected

7   by the Second Amendment when it comes to gun possession.

8   It's directly from the language of Vongxay.  But in this

9   case, there's even a stronger reason to say that with regard

10  to someone who's been convicted of a misdemeanor crime of

11  domestic violence because, by definition, they've been

12  convicted of a violent crime.

13       Under felons, you could have a felon who was convicted

14  of tax evasion.  So a completely nonviolent criminal, the

15  Ninth Circuit has said you're disqualified -- is another term

16  the Ninth Circuit used -- from protection under the Second

17  Amendment.  So if felons across the board are not protected

18  by Heller, then, by implication, someone who's been convicted

19  of a violent crime, domestic violence, is also not protected

20  by the Second Amendment.

21       And there are cases which say -- the Eleventh Circuit

22  has said that, the Tenth Circuit has said that, and a number

23  of district courts have said that, that for the same reasons

24  that the court articulated for saying that these presumably

25  lawful long-standing prohibitions that the Supreme Court

1    referred to in Heller, for the reasons that courts have said

2    that felons are not protected by the Second Amendment,

3    there's even a stronger reason for saying that persons

4    convicted of misdemeanor crimes of domestic violence should

5    not be protected.

6         So assuming there's no safety valve, as tough medicine

7    as that is for the plaintiffs to hear, the Ninth Circuit has

8    already said you're out of luck if you're a felon in

9    possession.  And there are courts that say, by implication,

10   the same should apply to persons convicted of misdemeanor

11   crimes of domestic violence because they're, by definition,

12   violent offenders.

13        MR. KILMER:  Now who's rewriting the statute, your

14   Honor?  If the federal government's position is a misdemeanor

15   crime of domestic violence should be treated exactly like a

16   felony, the Lautenberg amendment could have just as easily

17   said that.  It doesn't.  It says that there is a state law

18   restoration procedure if your rights have been taken away.

19   If your rights have been restored under state law, you no

20   longer fall under this prohibition.

21        It's also quite wrong to say that felons are forever

22   barred.  Felons are not forever barred.  There's a procedure

23   under 925 for restoring a felon's rights.  And but for the

24   fact that Congress doesn't fund the program, a felon could

25   even have their rights restored.  And this is all prior to

1    Heller.  This is all prior to McDonald.

2         So the government recognizes, the Legislature has

3    always recognized, both the State of California and the

4    federal government, that rehabilitation and restoration of

5    rights is part of the criminal law process.  They may erect a

6    very high bar like California does and say it's ten years,

7    pal.  If you hurt somebody in your family, if you strike your

8    wife or strike your child or strike your spouse, you're going

9    to lose important civil rights for ten years.  No way around

10   it.  And we're not here arguing that that's not legitimate.

11   What we're saying is that if the state restores the rights,

12   the federal government has to recognize that.

13        THE COURT:  And why don't they?  Particularly in a

14   case where there's absolutely no avenue available to these

15   plaintiffs at all for relief under the statute.  There isn't.

16   I'm paraphrasing, but, in effect, you're saying that's tough.

17   That was contemplated by the plain language of this statute.

18   And that's why I have problems accepting that argument when I

19   read these cases that you cite to me that keep talking about,

20   well, no, it's okay to include this in the statute so long as

21   there is some mechanism, as this case Smith says, as long as

22   there's a mechanism where domestic violence misdemeanants can

23   regain their right to lawfully keep and bear arms.

24        MR. OLSEN:  My response to that is twofold.  Yes, the

25   government is saying tough, not just willy-nilly saying it's

1    tough, but because the Ninth Circuit has said that with

2    respect to felons in possession.  That without even looking

3    to these avenues that a defendant may have for restoring

4    civil rights, the Ninth Circuit has said, and the quote is,

5    "the right established by Heller does not apply to felons."

6    And that's at Vongxay, 594 F.3d at 1119.  So it's twofold.

7    One, it's tough.  But two, I do read Smith, and there's

8    another case cited in the government's brief called Tooley.

9    The way I read their analysis is that, first of all, it's not

10   necessarily a lifetime ban because of these procedures that

11   you can follow.  But then, secondly, assuming that those

12   avenues are not available to you, it still satisfies

13   intermediate scrutiny because, although the statute

14   potentially could have been more narrowly drafted, for

15   example, by putting a time limitation on your prohibition on

16   possessing firearms, that Congress didn't have to do that

17   because although you may narrow the sweep, you would lessen

18   the effectiveness of a statute, and that there's plenty of

19   empirical evidence which establishes that persons convicted

20   of misdemeanor crimes of domestic violence are recidivists.

21          THE COURT:  So you want me to fashion an order that

22   says under the facts of this specific case, the State of

23   California does not give these plaintiffs any opportunity

24   whatsoever to seek expungement, pardon, dismissal, or the

25   restoration of civil rights for the rest of their lives.  And

1    even under those specific set of facts, which are undisputed,

2    the law as applied is still constitutional under the Second

3    Amendment.  That's the conclusion you want me to reach.

4           MR. OLSEN:  Yes.

5           THE COURT:  And finish the rest of that paragraph.

6    Why?

7           MR. OLSEN:  My only quibble there is I'm not sure

8    whether it's accurately called an as-applied challenge

9    because the statute hasn't been applied to them.  I think

10    it's probably more appropriately framed in terms of an

11    overbreadth challenge.  And there's some references in Smith

12    and the Williams case from the Seventh Circuit which talk

13    about arguments that aren't pending before the court but

14    could potentially be brought along the lines of what

15    plaintiffs are trying to argue now, and they're framed in

16    terms of an overbreadth challenge which I think is a facial

17    challenge.

18           THE COURT:  You keep saying the statute isn't being

19    applied to them, and I'm missing that.  Why isn't the statute

20    being applied to them?

21           MR. OLSEN:  Well, they haven't been convicted under

22    this statute, which is the way 99 percent of these

23    constitutional challenges that you see is that someone --

24           THE COURT:  Oh, I see.  They didn't go out and get

25    arrested.

1          MR. OLSEN:  Correct.

2          THE COURT:  Okay.  Interesting.  Okay.

3          MR. OLSEN:  Assuming that the argument is more

4    properly brought as an overbreadth challenge, which the

5    plaintiffs have standing to bring, yes, the government would

6    ask that you enter that order assuming for purposes of

7    argument that none of these safety valves are available, the

8    statute is still constitutional.

9          THE COURT:  Under your analysis, that because under

10   the law that applies to felons, in effect, Congress intended

11   the same rationality be applied to, and I understand it's

12   because of the specific crime of domestic violence, that they

13   should be treated similarly.

14         MR. OLSEN:  Just like felons in possession,

15   individuals who have been convicted of crimes of domestic

16   violence are also in that category that the Supreme Court

17   referred to as presumptively lawful.  Even if you have to go

18   on and apply intermediate scrutiny, that even if it is a

19   lifetime ban, the lifetime ban on persons who have been

20   convicted of violent crimes like that, it substantially

21   promotes a legitimate government interest.  You know, it

22   could potentially be more narrowly drafted, but Congress

23   doesn't have to do that to satisfy intermediate scrutiny, and

24   it satisfies intermediate scrutiny.

25         THE COURT:  Mr. Kilmer, I'll give you the final word.

1      MR. KILMER:  It's premature to assume that the Ninth

2  Circuit or any higher court is going to apply intermediate

3  scrutiny to Second Amendment rights.  The Supreme Court in

4  Heller, and I believe there was some language in McDonald,

5  said that rational basis clearly doesn't apply.  An

6  interest-balancing test that Justice Breyer proposed clearly

7  doesn't apply.  By my reading, that means intermediate and

8  rational basis are out the window, and we have to follow

9  something along the lines of the Seventh Circuit case, Ezell

10  vs. City of Chicago, that says something close to almost

11  strict.  But one of the other things that we had is Heller

12  and McDonald --

13      THE COURT:  Were you practicing your argument for the

14  Nordyke case just now?

15      MR. KILMER:  I might be, your Honor.  I might be.

16  However, one of the things -- I'll admit to being somewhat

17  hardheaded here.

18      THE COURT:  That's your job.

19      MR. KILMER:  I have been arguing for strict scrutiny

20  in the Nordyke case and in other cases that I'm prosecuting.

21  But, you know, it dawned on me when I read the U.S. Supreme

22  Court case that came out earlier this week, United States vs.

23  Jones, that the Supreme Court is subtly shifting towards a

24  historical categorical analysis of fundamental rights and

25  taking a look at what were the rights -- how were the rights

1    defined at the time the amendment was ratified or at the time

2    it was applied to the states.  So we're looking at 1798 and

3    1868 for laws applied to the states, which doesn't count here

4    because this is a federal law.  There were no laws forbidding

5    misdemeanants or misdemeanor crimes of domestic violence from

6    having guns when the Second Amendment was ratified.  So if we

7    go down that path of scrutiny analysis, then the government

8    just flat loses.  So it's premature at this point for the

9    Court to engage in an exercise of trying to second-guess the

10   Ninth Circuit on whether they're going to apply immediate

11   scrutiny or undue burden or almost strict scrutiny, which is

12   why we kind of didn't hit our Second Amendment argument all

13   that heavy in our motion for summary judgment.  We just kind

14   of laid the argument out there and said well, it's the

15   government's burden.  They've got to come up with evidence.

16   One of the things I would note is they didn't produce any

17   admissible evidence in their opposition to the summary

18   judgment motion.

19        THE COURT:  It's an interesting question that reminded

20   me of something to ask Mr. Olsen.  And that is what you

21   brought me is a motion to dismiss, and so I'm really

22   precluded from sort of deciding the intermediate scrutiny

23   issue on a motion to dismiss, aren't I?

24        MR. OLSEN:  I think that's right, your Honor.

25        THE COURT:  I have to wait for the motion for summary

1   judgment.

2       MR. OLSEN:  I think that's correct.  Although I would

3   argue that you don't even have to reach the intermediate

4   scrutiny, because if you apply that Ninth Circuit decision in

5   Vongxay, Vongxay says we don't need to apply any

6   constitutional scrutiny to the statute.

7       THE COURT:  Right.

8       MR. OLSEN:  So I think if you issued an opinion along

9   the lines of Vongxay and extended Vongxay to 922(g)(9), I

10  think that would be appropriate for dismissal under 12(b)(6).

11      THE COURT:  Okay.  I understand your point.

12      Mr. Kilmer, as I said, I'll give you the final word.

13  I'm going to obviously take it under submission.

14      MR. KILMER:  Yes, your Honor.  I think the Court

15  understands the issues as we've briefed them.  You're going

16  to disallow my claim of our defective waiver theory.

17      THE COURT:  Right.

18      MR. KILMER:  We have the other theory of the

19  restoration of rights by operation of law which includes all

20  the plaintiffs.

21      THE COURT:  Right.

22      MR. KILMER:  Did the Court want to address the one

23  singular plaintiff, Mr. Enos, who actually went to a superior

24  court judge under 1203 --

25      THE COURT:  12021(c)(3).

1      MR. KILMER:  -- 12021(c)(3) and had a judge say yeah,

2  your rights are restored.  The federal government refuses to

3  recognize that as well.  By the way, that due process right

4  is no longer available to anybody in the state because

5  everybody convicted after 1993 is apprised or at least on

6  notice that their California conviction will result in the

7  loss of their guns.

8      THE COURT:  Mr. Olsen, do you want to respond to the

9  12021(c)(3)?

10     MR. OLSEN:  Yeah.  For the same reasons that the

11 plaintiffs' arguments lack merit under, what is it, 12021(a),

12 they fail for the same reasons.  I mean it's not --

13 regardless of whether you got your right to bear arms

14 restored by operation of law under (a)(1) or by a superior

15 court judge under (c)(3), it doesn't matter, because you

16 haven't had your civil rights restored within the meaning of

17 the Lautenberg amendment.  So they're the same arguments.

18     THE COURT:  Okay.

19     MR. OLSEN:  I have nothing further.

20     THE COURT:  I understand your argument.

21     MR. KILMER:  I have nothing further to add, your

22 Honor.

23     THE COURT:  Thank you both for another interesting

24 argument.  We'll come back to reschedule that summary

25 judgment motion.  We're still two months away, and I think

1    even given my caseload, I'll be able to get an opinion out

2    hopefully fairly soon.

3           When were you thinking about wanting to reschedule the

4    summary judgment hearing?

5           MR. KILMER:  Your Honor, the order telling me that I

6    had to be prepared to argue the case en banc said basically

7    the week of the 19th.

8           THE COURT:  Okay.

9           MR. KILMER:  They were somewhat vague on that.

10          THE COURT:  I have to tell you honestly, I'm not sure

11   I'm going to need argument on the summary judgment motion.

12   And obviously I can decide motions without a hearing.  And I

13   say that only because of the arguments today and the first

14   argument that we had.  So what I'm going to do is vacate the

15   hearing date on the summary judgment motion.  It's been fully

16   briefed.

17          MR. KILMER:  All right.

18          THE COURT:  Mr. Olsen, I do want you to respond,

19   though, so I have something on the record to the objections.

20   I don't know if you did yet or not.  You submitted a number

21   of documents that Mr. Kilmer objected to on evidentiary

22   grounds.  And just so the record's complete, make sure you

23   respond.

24          MR. OLSEN:  I'd be happy to file something written

25   along those lines.

1          THE COURT:  Right.

2          MR. OLSEN:  I'm not aware of any requirement that when

3     the government submits empirical evidence in the form of

4     studies --

5          THE COURT:  How did you ask me to take notice of that?

6     Did you ask me to take judicial notice?

7          MR. OLSEN:  I have not, and I probably should do that.

8     I just attached them to an appendix.

9          THE COURT:  I just want you to make sure there's a

10    response to the objections.

11         MR. OLSEN:  I will do that.

12         THE COURT:  So I'm going to vacate the hearing date

13    itself.  And if I need a hearing, we'll contact both of you

14    and bring you back for a hearing.  If not, I'll just decide

15    it on the papers.  Okay?

16         MR. KILMER:  And, your Honor, just to keep the record

17    clear, do we already have a stipulation --

18         THE COURT:  You should put it in writing and submit

19    it.

20         MR. KILMER:  Okay.  But I'm going to hold off filing

21    another amended complaint at this point in order to keep the

22    record clear because you're going to make a ruling.

23         THE COURT:  Right.  But make sure that stipulation

24    with respect to the naming of the proper defendant, the two

25    of you draft something and get it to me so the record is

1    complete.

2         MR. KILMER:  I'll take the lead on that.

3         THE COURT:  Thank you both.

4         MR. OLSEN:  Thank you, your Honor.

5         THE COURT:  All right.

6         (Proceedings concluded at 3:44 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I certify that the foregoing is a correct transcript

2  from the record of proceedings in the above-entitled matter.

3

4

5                      /s/ Kelly O'Halloran

6                      KELLY O'HALLORAN, CSR #6660

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# U.S. District Court
## Eastern District of California − Live System (Sacramento)
## CIVIL DOCKET FOR CASE #: 2:10−cv−02911−JAM−EFB

| | |
|---|---|
| Enos et al v. Holder et al | Date Filed: 10/29/2010 |
| Assigned to: Judge John A. Mendez | Date Terminated: 02/28/2012 |
| Referred to: Magistrate Judge Edmund F. Brennan | Jury Demand: None |
| Case in other court:  9th Circuit, 12−15498 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Richard Enos**                    represented by    **Donald E. J. Kilmer , Jr.**
Law Offices of Donald Kilmer, APC
1645 Willow Street, Suite 150
San Jose, CA 95125
408−264−8489
Fax: 408−264−8487
Email: don@dklawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeff Bastasini**                  represented by    **Donald E. J. Kilmer , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Louie Mercado**                   represented by    **Donald E. J. Kilmer , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Walter Groves**                   represented by    **Donald E. J. Kilmer , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Manuel Monteiro**                 represented by    **Donald E. J. Kilmer , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edward Erikson**                  represented by    **Donald E. J. Kilmer , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Vernon Newman**                   represented by    **Donald E. J. Kilmer , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

132

**Jeff Loughran**
*TERMINATED: 05/05/2011*

represented by **Donald E. J. Kilmer , Jr.**
(See above for address)
*TERMINATED: 05/05/2011*

**Plaintiff**

**William Edwards**
*TERMINATED: 05/05/2011*

represented by **Donald E. J. Kilmer , Jr.**
(See above for address)
*TERMINATED: 05/05/2011*

V.

**Defendant**

**Eric Holder**
*US Attorney General*

represented by **Edward A Olsen , GOVT**
United States Attorney's Office
501 I Street
Suite 10−100
Sacramento, CA 95814
916−554−2700
Fax: 916−554−2900
Email: edward.olsen@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Mueller, III**
*Director FBI*

represented by **Edward A Olsen , GOVT**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States**

represented by **Edward A Olsen , GOVT**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/29/2010 | 1 | COMPLAINT against All Defendants by Edward Erikson, Jeff Bastasini, Walter Groves, Manuel Monteiro, William Edwards, Jeff Loughran, Richard Enos, Vernon Newman, Louie Mercado. (Attachments: # 1 Civil Cover Sheet)(Kilmer, Donald) (Entered: 10/29/2010) |
| 10/29/2010 | | RECEIPT number #CAE200030645 $350.00 fbo Richard Enos by Donald E Kilmer Jr on 10/29/2010. (Kaminski, H) (Entered: 10/29/2010) |
| 10/29/2010 | 3 | SUMMONS ISSUED as to *Eric Holder, Robert Mueller, III* with answer to complaint due within *60* days. Attorney *Donald E. J. Kilmer, Jr.* *Law Offices Of Donald Kilmer, APC* *1645 Willow Street, Suite 150* *San Jose, CA 95125*. (Kaminski, H) (Entered: 10/29/2010) |
| 10/29/2010 | 4 | CIVIL NEW CASE DOCUMENTS ISSUED; (Attachments: # 1 Consent Form, # 2 Order re Page Limits) (Kaminski, H) (Entered: 10/29/2010) |
| 10/29/2010 | 5 | VDRP ISSUED; (Kaminski, H). (Entered: 10/29/2010) |
| 12/22/2010 | 6 | SUMMONS RETURNED EXECUTED by Edward Erikson, Jeff Bastasini, Walter Groves, Manuel Monteiro, William Edwards, Jeff Loughran, Richard Enos, Vernon Newman, Louie Mercado. Eric Holder served on 11/24/2010, answer due 1/24/2011; Robert Mueller, III served on 11/22/2010, answer due 1/21/2011. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Declaration, # 4 Exhibit)(Kilmer, Donald) (Entered: 12/22/2010) |

| 01/10/2011 | 7 | STIPULATION and PROPOSED ORDER re Case Management by plaintiffs. (Kilmer, Donald) Modified on 1/12/2011 (Marciel, M). (Entered: 01/10/2011) |
|---|---|---|
| 01/10/2011 | 8 | FIRST AMENDED COMPLAINT against Eric Holder, Robert Mueller, III by plaintiffs. (Kilmer, Donald) Modified on 1/12/2011 (Marciel, M). (Entered: 01/10/2011) |
| 01/11/2011 | 9 | STIPULATION and ORDER signed by Judge John A. Mendez on 01/11/11 ORDERING that Attorney Edward A Olsen, GOVT is authorized to represent dfts Eric Holder and Robert Mueller, III; the dfts have been properly served, the dfts make a special appearance and agree to accept all future service via CM/ECF; plfs anticipate filing an Amended Complaint by 02/20/11; dfts agree to respond to the Amended Complaint by 02/25/11. (Benson, A.) (Entered: 01/11/2011) |
| 02/24/2011 | 10 | STIPULATION to extend deadline for responsive pleading by defendants. (Olsen, Edward) Modified on 2/25/2011 (Marciel, M). (Entered: 02/24/2011) |
| 03/04/2011 | 11 | MOTION to DISMISS by Eric Holder, Robert Mueller, III. Motion Hearing set for 5/4/2011 at 09:30 AM in Courtroom 6 (JAM) before Judge John A. Mendez. (Attachments: # 1 Points and Authorities)(Olsen, Edward) (Entered: 03/04/2011) |
| 04/20/2011 | 12 | OPPOSITION by Jeff Bastasini, William Edwards, Richard Enos, Edward Erikson, Walter Groves, Jeff Loughran, Louie Mercado, Manuel Monteiro, Vernon Newman to 11 MOTION to DISMISS. (Kilmer, Donald) (Entered: 04/20/2011) |
| 04/21/2011 | 13 | REQUEST for JUDICIAL NOTICE by Jeff Bastasini, William Edwards, Richard Enos, Edward Erikson, Walter Groves, Jeff Loughran, Louie Mercado, Manuel Monteiro, Vernon Newman in re 12 Opposition to Motion. (Kilmer, Donald) (Entered: 04/21/2011) |
| 04/21/2011 | 14 | NOTICE of ERRATA and DECLARATION of Donald Kilmer in OPPOSITION TO 11 MOTION to DISMISS. (Kilmer, Donald) Modified on 4/28/2011 (Zignago, K.). (Entered: 04/21/2011) |
| 04/27/2011 | 15 | REPLY by Eric Holder, Robert Mueller, III to RESPONSE to 11 Motion to Dismiss. (Olsen, Edward) (Entered: 04/27/2011) |
| 04/27/2011 | 16 | NOTICE of Filing of Corrected Reply by Eric Holder, Robert Mueller, III re 15 Reply to Response to Motion. (Attachments: # 1 Corrected Reply Brief)(Olsen, Edward) (Entered: 04/27/2011) |
| 05/03/2011 | 17 | NOTICE of Additional Authority by Eric Holder, Robert Mueller, III re 11 MOTION to DISMISS. (Attachments: # 1 Exhibit A)(Olsen, Edward) (Entered: 05/03/2011) |
| 05/03/2011 | 18 | NOTICE (Supplemental) of Additional Authority by Eric Holder, Robert Mueller, III re 11 MOTION to DISMISS. (Attachments: # 1 Exhibit A)(Olsen, Edward) (Entered: 05/03/2011) |
| 05/04/2011 | 19 | MINUTES (Text Only) for proceedings held before Judge John A. Mendez: MOTION HEARING held on 5/4/2011 re 11 MOTION to DISMISS filed by Robert Mueller, III, Eric Holder, MOTIONS SUBMITTED: Further briefing, limited to 5 pages, to be filed by 5/11/11 and 5/18/11. Order to be prepared by Court in due course. Plaintiffs Counsel D. Kilmer present. Defendants Counsel E. Olsen present. Court Reporter: K. O'Halloran. (Vine, H) (Entered: 05/04/2011) |
| 05/05/2011 | 20 | MINUTE ORDER: Pursuant to the Courts ruling during oral argument on 5/4/11, Plaintiffs William Edwards and Jeff Loughran are dismissed from this case, due to improper joinder and venue. Dismissal is without prejudice for re−filing in the appropriate venue. IT IS SO ORDERED. (TEXT ENTRY ONLY) (Vine, H) (Entered: 05/05/2011) |
| 05/06/2011 | 21 | SUPPLEMENTAL BRIEF by plts re 17 18 Supplemental Authority submitted by dfts. (Kilmer, Donald) Modified on 5/9/2011 (Duong, D). (Entered: 05/06/2011) |
| 05/18/2011 | 22 | BRIEF by Eric Holder, Robert Mueller, III. (Olsen, Edward) (Entered: 05/18/2011) |
| 06/17/2011 | 23 | NOTICE of Supplemental Authority by plaintiffs. (Kilmer, Donald) Modified on 6/20/2011 (Marciel, M). (Entered: 06/17/2011) |

| 07/08/2011 | 24 | ORDER signed by Judge John A. Mendez on 7/7/11 GRANTING IN PART AND DENYING IN PART 11 Motion to Dismiss. Defendants' motion to dismiss the FAC is GRANTED in part and DENIED in part. Bastasini's, Mercado's, Groves', Monteiro's, Erickson's, and Newman's declaratory relief and constitutional claims are DISMISSED, with leave to amend. Enos' First Amendment, Tenth Amendment and Fifth Amendment claims are DISMISSED, with prejudice. The motion to dismiss is DENIED as to dismissal of Enos' declaratory relief and Second Amendment claims. Plaintiffs must file a Second Amended Complaint within twenty (20) days of the date of this order. (Meuleman, A) (Entered: 07/08/2011) |
| --- | --- | --- |
| 07/20/2011 | 25 | STIPULATION and PROPOSED ORDER for Extend Time to File 2nd Amended Complaint by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. (Kilmer, Donald) (Entered: 07/20/2011) |
| 07/22/2011 | 26 | STIPULATION and ORDER signed by Judge John A. Mendez on 7/20/11 ORDERING that the plaintiffs shall file and serve a second amended complaint on or before 8/29/11. (Donati, J) (Entered: 07/22/2011) |
| 08/29/2011 | 27 | SECOND AMENDED COMPLAINT against all Defendants by Plaintiffs.(Kilmer, Donald) Modified on 8/31/2011 (Zignago, K.). (Entered: 08/29/2011) |
| 09/06/2011 | 28 | STIPULATION and PROPOSED ORDER for To Extend Deadline for Filing a Responsive Pleading to Plaintiff's Second Amended Complaint re 27 Amended Complaint by Eric Holder, Robert Mueller, III. (Olsen, Edward) (Entered: 09/06/2011) |
| 09/07/2011 | 29 | STIPULATION and ORDER 28 signed by Judge John A. Mendez on 9/6/11, ORDERING that the deadline for the filing of a responsive pleading to plaintiffs' second amended complaint is EXTENDED to 9/26/11. (Kastilahn, A) (Entered: 09/07/2011) |
| 09/13/2011 | 30 | SECOND STIPULATION and [PROPOSED] ORDER to Extend Deadline for Filing a Responsive Pleading to Plaintiffs' Second Amended Complaint by Eric Holder, Robert Mueller, III. (Olsen, Edward) Modified on 9/14/2011 (Mena−Sanchez, L). (Entered: 09/13/2011) |
| 09/14/2011 | 31 | STIPULATION and ORDER signed by Judge John A. Mendez on 9/13/11 ORDERING the deadline for the filing of a responsive pleading to plaintiffs' Second Amended Complaint extended from September 26, 2011, to October 3, 2011. (Becknal, R) (Entered: 09/14/2011) |
| 10/03/2011 | 32 | MOTION to DISMISS by Eric Holder, Robert Mueller, III. Motion Hearing set for 11/16/2011 at 09:30 AM in Courtroom 6 (JAM) before Judge John A. Mendez. (Attachments: # 1 Points and Authorities)(Olsen, Edward) (Entered: 10/03/2011) |
| 10/13/2011 | 33 | STIPULATION and PROPOSED ORDER for Continuance of Hearing by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. (Kilmer, Donald) (Entered: 10/13/2011) |
| 10/18/2011 | 34 | STIPULATION and PROPOSED ORDER for Continuance by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. (Kilmer, Donald) (Entered: 10/18/2011) |
| 10/19/2011 | 35 | STIPULATION and ORDER signed by Judge John A. Mendez on 10/18/11 ORDERING hearing on 32 MOTION to DISMISS reset for 1/25/2012 at 09:30 AM in Courtroom 6 (JAM) before Judge John A. Mendez, Responses due by 1/11/2012, Replies due by 1/18/2012. Plaintiffs' FRCP 56 cross−motion shall be heard on 1/25/12 at 9:30 a.m. Pltfs' motion and supporting documents shall be filed on or before 12/14/11; defs' opposition due 1/11/12; pltfs' reply due 1/18/12. (Meuleman, A) (Entered: 10/19/2011) |
| 12/06/2011 | 36 | NOTICE *of Additional Authority* by Eric Holder, Robert Mueller, III. (Olsen, Edward) (Entered: 12/06/2011) |
| 12/12/2011 | 37 | STIPULATION and PROPOSED ORDER for Extension of Time to File FRCP 56 Motion by plaintiffs. (Kilmer, Donald) Modified on 12/13/2011 (Duong, D). (Entered: 12/12/2011) |

| | | |
|---|---|---|
| 12/13/2011 | 38 | STIPULATION and ORDER signed by Judge John A. Mendez on 12/13/2011 ORDERING that the parties hereby stipulate that Plaintiffs have good cause to extend the due date for filing/serving their moving papers on their FRCP 56 Motion from 12/14/2011 to 12/19/2011, that neither party is prejudiced by this extension, and that all other due dates currently set forth in this Court 35 Order shall remain as set. (Zignago, K.) (Entered: 12/13/2011) |
| 12/19/2011 | 39 | MOTION for SUMMARY JUDGMENT by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. Motion Hearing set for 1/25/2012 at 09:30 AM in Courtroom 6 (JAM) before Judge John A. Mendez. (Attachments: # 1 Exhibit ATF 3310.3)(Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 40 | STATEMENT of Undisputed Facts by Plaintiffs Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman re 39 MOTION for SUMMARY JUDGMENT. (Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 41 | DECLARATION of BASTASINI in SUPPORT OF 39 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit)(Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 42 | DECLARATION of ENOS in SUPPORT OF 39 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit)(Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 43 | DECLARATION of ERIKSON in SUPPORT OF 39 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit)(Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 44 | DECLARATION of GROVES in SUPPORT OF 39 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit)(Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 45 | DECLARATION of MERCADO in SUPPORT OF 39 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit)(Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 46 | DECLARATION of MONTEIRO in SUPPORT OF 39 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit)(Kilmer, Donald) (Entered: 12/19/2011) |
| 12/19/2011 | 47 | DECLARATION of NEWMAN in SUPPORT OF 39 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit)(Kilmer, Donald) (Entered: 12/19/2011) |
| 01/04/2012 | 48 | MINUTE ORDER: The parties are hereby notified that the time for the hearing on the motion(s) now set for January 25, 2012 is reset to 1:30 p.m. (TEXT ENTRY ONLY)(Vine, H) (Entered: 01/04/2012) |
| 01/11/2012 | 49 | OPPOSITION to 39 Motion for Summary Judgment by Eric Holder, Robert Mueller, III. (Attachments: # 1 Response to Plaintiffs' Statement of Undisputed Facts, # 2 Appendix of Articles Cited In Defendants' Opposition, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G) (Olsen, Edward) Modified on 1/12/2012 (Michel, G). (Entered: 01/11/2012) |
| 01/11/2012 | 50 | OPPOSITION to 32 Motion to Dismiss by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. (Kilmer, Donald) Modified on 1/12/2012 (Michel, G). (Entered: 01/11/2012) |
| 01/18/2012 | 51 | REPLY by Eric Holder, Robert Mueller, III to RESPONSE to 32 MOTION to DISMISS. (Olsen, Edward) Modified on 1/30/2012 (Zignago, K.). (Entered: 01/18/2012) |
| 01/18/2012 | 52 | OBJECTIONS by Plaintiffs Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman to 49 Opposition to Motion,. (Kilmer, Donald) (Entered: 01/18/2012) |
| 01/18/2012 | 53 | REQUEST for JUDICIAL NOTICE by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. (Kilmer, Donald) (Entered: 01/18/2012) |
| 01/18/2012 | 54 | REQUEST for JUDICIAL NOTICE by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. (Kilmer, Donald) (Entered: 01/18/2012) |

| | | |
|---|---|---|
| 01/18/2012 | 55 | REPLY by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman to RESPONSE to 39 MOTION for SUMMARY JUDGMENT. (Kilmer, Donald) Modified on 1/30/2012 (Zignago, K.). (Entered: 01/18/2012) |
| 01/19/2012 | 56 | MINUTE ORDER: The parties are advised that the hearing on plaintiff's motion for summary judgment 39 is ordered reset for 3/21/2012 at 09:30 AM in Courtroom 6 (JAM) before Judge John A. Mendez. The defendant's motion to dismiss 32 shall remain calendared for hearing on 1/25/12 @ 9:30 a.m. (TEXT ENTRY ONLY) (Vine, H) (Entered: 01/19/2012) |
| 01/19/2012 | 57 | CORRECTED MINUTE ORDER: The parties are advised that the hearing on plaintiff's motion for summary judgment 39 is ordered reset for 3/21/2012 at 09:30 AM in Courtroom 6 (JAM) before Judge John A. Mendez. The defendant's motion to dismiss 32 shall remain calendared for hearing on 1/25/12 @ 1:30 p.m. (TEXT ENTRY ONLY)(Vine, H) (Entered: 01/19/2012) |
| 01/25/2012 | 58 | MINUTES (Text Only) for proceedings held before Judge John A. Mendez: MOTION HEARING held on 1/25/2012 re 32 MOTION to DISMISS filed by Robert Mueller, III, Eric Holder, MOTIONS SUBMITTED:. Plaintiffs Counsel D. Kilmer present. Defendants Counsel E. Olsen present. Court Reporter: K. O'Halloran. (Vine, H) (Entered: 01/25/2012) |
| 02/01/2012 | 59 | REQUEST for *Judicial Notice and Response to 52 Plaintiffs' Objections to Material Submitted by Defendants*, by Eric Holder, Robert Mueller, III. . (Olsen, Edward) Modified on 2/3/2012 (Kastilahn, A). (Entered: 02/01/2012) |
| 02/01/2012 | 60 | STIPULATION and PROPOSED ORDER for adding US as party by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman. (Kilmer, Donald) (Entered: 02/01/2012) |
| 02/02/2012 | 61 | STIPULATION and ORDER signed by Judge John A. Mendez on 2/1/2012 ORDERING that the United States be added as a defendant in this action. United States ADDED. Attorney Edward A. Olsen for United States ADDED. (Michel, G) (Entered: 02/02/2012) |
| 02/17/2012 | 62 | OBJECTIONS by Plaintiffs Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Louie Mercado, Manuel Monteiro, Vernon Newman to 59 Request. (Kilmer, Donald) (Entered: 02/17/2012) |
| 02/28/2012 | 63 | ORDER signed by Judge John A. Mendez on 2/28/2012 GRANTING 32 Defendants' motion to dismiss, and plaintiffs' second amended complaint is DISMISSED, with prejudice; the 3/21/2012 hearing on plaintiffs motion for summary judgment 39 is VACATED. (Reader, L) (Entered: 02/28/2012) |
| 02/28/2012 | 64 | JUDGMENT dated *2/28/2012* pursuant to order signed by Judge John A. Mendez on 2/28/2012. (Reader, L) (Entered: 02/28/2012) |
| 02/29/2012 | 65 | NOTICE of APPEAL by Jeff Bastasini, Richard Enos, Edward Erikson, Walter Groves, Jeff Loughran, Louie Mercado, Manuel Monteiro, Vernon Newman. (Attachments: # 1 Notice Representation Statement, # 2 Proof of Service)(Kilmer, Donald) (Entered: 02/29/2012) |
| 03/01/2012 | | RECEIPT number #CAE200042588 $455.00 by Donald E Kilmer Jr on 3/1/2012. (Becknal, R) (Entered: 03/01/2012) |
| 03/07/2012 | 68 | APPEAL PROCESSED to Ninth Circuit re 65 Notice of Appeal filed by Vernon Newman, Jeff Bastasini, Manuel Monteiro, Louie Mercado, Richard Enos, Jeff Loughran, Walter Groves, Edward Erikson. Filed dates for Notice of Appeal *2/29/2012*, Complaint *10/29/2012* and Appealed Order / Judgment *2/28/2012*. ** *Fee Status: Paid on 3/1/2012 in the amount of $455.00* ** (Attachments: # 1 Appeal Information, # 2 Certificate of Record) (Reader, L) (Entered: 03/07/2012) |
| 03/08/2012 | 69 | USCA CASE NUMBER 12−15498 for 65 Notice of Appeal filed by Vernon Newman, Jeff Bastasini, Manuel Monteiro, Louie Mercado, Richard Enos, Jeff Loughran, Walter Groves, Edward Erikson. (Waggoner, D) (Entered: 03/08/2012) |

| | | |
|---|---|---|
| 03/15/2012 | <u>70</u> | TRANSCRIPT of Motion for Summary Judgment held on 1/25/12, before Judge John A. Mendez, filed by Court Reporter Kelly OHalloran, Phone number 916−448−2712 E−mail kohalloran@comcast.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may also be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 4/5/2012. Redacted Transcript Deadline set for 4/16/2012. Release of Transcript Restriction set for 6/14/2012. (O'Halloran, K) (Entered: 03/15/2012) |

| 9th Circuit Case Number(s) | 12-15498 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jul 2, 2014 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Donald Kilmer

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |